#### SKELTON et al. v. IGOE BROS.

District Court, E. D. New York. May 18, 1928.

No. 3237.

Victor D. Borst, of New York City, for plaintiffs.

G. Willard Rich, of New York City, for defendant.

CAMPBELL, District Judge. This is a suit for the alleged infringement of patent No. 1,240,503, issued to Frederick Skelton, for reinforced D-handle, dated September 18, 1917. The defenses are invalidity and noninfringement.

The patentee describes the invention generally as follows:

"This invention relates to D-handles for shovels, spades, and other tools, and more particularly to wooden handles consisting of a haft or stem having diverging arms at its upper ends, between which arms is inserted a grip-bar."

And sets forth its objects as follows:

"The primary object of the invention is to provide a reinforcement for a handle of this character that will protect the portions of the handle which might become loose, worn, or broken, due to the rough usage to which a handle of this character is ordinarily subjected.

"Other objects of the invention is to provide a reinforcement which is composed of a minimum number of pieces, which is economical to manufacture and which will rigidly unite the parts of the wooden handle.

"With these and other objects in view, the invention contemplates a reinforcement for each arm, which comprises a ferrule or ring for engaging over the end of the grip-bar, a cap for protecting the upper end of the arm, and reinforcing strip which extends down the outer face of the arm for a considerable distance."

The problem which confronted the patentee, and which plaintiffs contend he solved by the patent in suit, was the production of a satisfactory split-D handle for heavy work.

The only handles in use on shovels for general work in 1907 or 1908 was the old style solid wood D-handles, which were very old.

The solid wood D-handle was relatively very wasteful of timber, requiring a blank for its construction at least as wide at the upper end as the width of the D, and had the serious defect of having a hand grip which was cross-grained, rendering the handles short-lived; the same frequently being checked or split before reaching the customer.

The split-D handle has obvious advantages over the old style, both in the considerable saving of wood, and also in that the hand grip can be formed with the grain running longitudinally of it instead of across it.

The hand grip in the split-D handle is not integral with the side arms, and the means commonly employed for securing it to the forks was a rivet or bolt extending longitudinally and substantially axially through the hand grip member, and at its ends through holes provided for it near the ends of the wooden arms or forks of the D.

This kind of a joint is very weak, because the ends of the arms of the fork portions are not effectively reinforced against the tendency to split, and, if they do split, the rivet or bolt may be drawn out of the ends of the arms of the forks, or pressed down into the arms.

Inasmuch as it was impractical to have the ends of the forked arms extend beyond the hand grip member, it was necessary that the rivet hole be quite near the ends, and, as all strain applied to the hand grip is transmitted through the rivets to their bearings in the arms, it was necessary to relieve the transverse rivet or bolt running through the hand grip member from such strain, and this is what the patentee claims to have accomplished by the patent in suit.

The patentee took out a patent (No. 685,-183) on a shovel blade construction, known as a solid shank or one-piece shovel.

There was a demand for a stronger handle, and the patentee made his first effort to relieve the strain on the rivet and transfer it to the body of the ends of the arms as a whole in patent No. 888,541, in which was described a ferrule construction for each end of the hand grip, which includes a ring 7 surrounding the reduced end of the hand grip, and an integral band 4 encircling the end of the adjacent fork arm. The heads of the transverse rivet bear against the metal of the ferrules 4, the wooden arms 2 are of diminishing width, and the sockets are correspondingly tapered, "so that the socket members 4 may be forced into firm engagement with the ends of said arms." This was termed the open top cap.

It proved unsatisfactory, and did not get beyond the experimental stage, because, either by a failure to obtain the desired wedging in the beginning or a slight shrinkage in the wooden arms, the wedging would be defeated, and the rivet would no longer be relieved of the strain.

The next effort of the patentee resulted in patent No. 914,678, which has now expired. This was the so-called short cap with the closed end. The construction shows rings encircling the reduced ends of the hand grip, and the closed end of the cap caused to bear directly on the ends of the wooden arms.

Shrinkage of the wood may cause the cap to be somewhat looser upon the arm than it was originally, but it will never cease to bear against the ends of the arms and thus relieve the rivets altogether of the strain of the inward force of the hand grip.

Large numbers of handles of that type were manufactured and sold. This construction relieved the rivet of any strain when a push was applied to the handle, but it did not relieve from a pulling strain upon the handle, or a twisting force upon the handle, as the cap was not secured against such strain, and the tendency of them was to enlarge the rivet holes.

The patent in suit has overcome the faults of patent No. 914,678, by providing the caps with the integral extensions 8 which lie against the outer face of the arms and are secured at their lower ends by rivets 9.

The distance these rivets 9 are located from the extremities of the arm reduces their tendency to split the arms, allow them to be pulled out, and permit the grip members to become disengaged, and the distance between the rivet 10 and the rivet 9 with the two remote points of attachment prevents any tendency of the cap to turn relatively to the side arm.

Plaintiffs base this suit upon all four claims of the patent in suit; the first three

being directed to the combination with the diverging arms formed on a wooden stem of a metallic reinforcement, the fourth being for a blank for forming a metallic reinforcement or cap piece for a handle, and read as follows:

"1. A D-handle comprising a wooden stem having diverging arms and a grip-bar inserted therebetween, and a metallic reinforcement for each arm comprising a ring fitting over the end of the grip-bar, a cap piece concealing the upper end of the arm, and a reinforcing strip secured to the outer face of the arm.

"2. A D-handle comprising a wooden stem having diverging arms and a grip-bar inserted therebetween and a one piece metallic reinforcement for each arm comprising a ring fitting over the end of the grip-bar, a cap piece concealing the upper end of the arm, and a reinforcing strip secured to the outer face of the arm.

"3. A D-handle comprising a wooden stem having diverging arms and a grip-bar inserted therebetween, and a one-piece metallic reinforcement formed of sheet metal for each arm comprising a ring fitting over the end of the grip-bar, a cap piece concealing the upper end of the arm and a reinforcing strip secured to the outer face of the arm.

"4. A blank for forming a metallic reinforcement for D-handles comprising a strip of sheet metal having a semicircular portion adapted to be cupped to form a cap and ears projecting downwardly from said semi-circular portion adapted, when bent, to form with the edge of the cupped portion a closed ring."

The claims 1, 2, and 3 of the patent in suit read directly on the defendant's structure, and, as plaintiffs' handles follow exactly the teachings of the patent in suit, and the defendant's handles are structurally identical with plaintiffs' handles, infringement is clearly shown.

As to claim 4, the cap on defendant's handle is made from a blank in all substantial respects the same as that shown in Fig. 3 of the patent in suit, and according to the steps described in that patent, and infringement is clearly shown.

We now come to a consideration of the defense of invalidity, in support of which defendant offered in evidence the following patents of the prior art:

Howard, No. 17,837, and reissue No. 1,-230, disclose split D-handles having a ferrule around the fork end which tends to prevent it from splitting and provides a metallic backing for the rivet heads. While this construction would, of course, give some relief to the rivet on the inward thrust, it would not be permanent, because with wear this protection would cease, and in no event does it furnish protection to the rivet on backward pulls nor to the caps from torsional stresses.

Heiser, No. 330,481, discloses the old style solid wood D-handle with reinforcing side strips E. To add the side strips E to the caps of the Howard patent or the earlier Skelton patent would not produce the result of the patent in suit, for the reason that, in order to relieve the rivet through the hand grip strain when a backward pull is exerted, and to hold the cap against rotation or torsional strain, it is necessary to have an integral extension secured to the outer face of the fork arms, as claimed in the patent in suit.

Walter, No. 601,690, discloses a split-D handle which does not have a cap piece which conceals the upper end of the arm nor the reinforcing strip secured to the outer face of the arm, but shows washers 11 under the rivet heads which bear against the wood, and, as the wood shrinks, the rivet heads would be left protruding, and would no longer hold the parts securely together against spreading.

Skelton, No. 888,541, and Skelton, No. 914,678, represent steps in the advance toward the patent in suit, which I think have been sufficiently discussed.

Jones, No. 967,197, discloses a split-D handle, but it does not have "a ring fitting over the end of the grip bar," and the grip bar is not coupled physically to the cap, so that the two would become one in the transmission of stresses. The cap pieces 15 and 16 do not relieve the rivet from strain on an inward thrust, nor is there a strip secured to the outer face of the arm to relieve the rivet in the case of a backward pull on the cap on a torsional stress.

Newton, British patent No. 1664, of 1862, same as Howard before mentioned.

Park, British patent No. 10,003, of 1908, disclosed old style solid wood D-handle having a metallic cover or armor, the purpose of which is to enable the handle to be used for tamping purposes, termed in the patent "ramming." The hand grip is an integral part of the arms, and the metallic cover does not relieve the rivet c from strain, as there is no strain exerted on the rivet.

Lundy, British patent No. 27,012, of 1913, discloses a split-D handle in which a reinforcing metal strip is countersunk flush with the handle grip, in a groove extending longitudinally of the handle grip, grooves

forming continuations of the handle grip, and a groove extending down the outside of each member of the split handle. This construction seems to me to be impracticable and expensive, and subject to the further objection that, unless the parts were very carefully fitted, projections would result at the grip portion. In this construction I find no suggestion of the combination of the claims in suit.

None of the patents cited is an anticipation of the patent in suit.

Defendant contends that the providing in the patent in suit of the reinforcing strip made by extending the cap some distance down the side of each arm and securely riveting it to the arm at its end did not constitute invention, but simply the act of a skilled mechanic.

Viewed with our present knowledge, that contention seems plausible, but, when we consider the efforts that were made by others and by the patentee himself to solve the problem during a long term of years, that which now seems so simple that any skilled mechanic would have seen it was really the last step in the accomplishment of the production of a satisfactory split-D handle.

The fact that the new combination produces a new result is evidence of invention. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177.

Even if all of the elements of the combination were old, the combination is patentable as it serves to produce a new result. Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017. That result has been so fully explained earlier in this opinion that it seems unnecessary to repeat it.

There seems to have been no question in the Patent Office of the invention of the patent in suit, as it was promptly allowed, without any citations against it.

If there was any doubt in my mind as to the invention of the patent in suit, it would be resolved in its favor when I consider its great commercial success.

No one, it seems to me, pays a higher tribute to the handle of the patent in suit than the defendant, for, with all the much lauded prior art at its command, it offers the sincerest form of flattery—imitation.

The first three claims of the patent in suit are valid, and ample authority for this decision is found in the opinion of the Circuit Court of Appeals for the First Circuit, in Skelton v. Ames Shovel & Tool Co., decided April 13, 1928.[1]

The fourth claim of the patent in suit is not anticipated by any of the patents of the prior art, and it teaches how to make, in an ingenious and economical way, plaintiffs' cap in one piece, by means of a stamping or drawing operation, from sheet metal stock. This represents a valuable contribution to the art. The fourth claim of the patent in suit is valid.

A decree may be entered in favor of the plaintiffs against the defendant, with an injunction and costs and the usual order of reference.