## SKELTON et al. v. BALDWIN TOOL WORKS.

### No. 3223.

Circuit Court of Appeals, Fourth Circuit.

April 12, 1932.

Victor D. Borst, of New York City, for appellants.

Charles M. Clarke, of Pittsburgh, Pa. (Marshall & Forrer, of Parkersburg, W. Va., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and MEEKINS, District Judge.

SOPER, Circuit Judge.

The appeal in this case was taken from a decree of the District Court dismissing a bill of complaint which sought an injunction and an accounting for patent infringement. The patents in suit are United States patents to Skelton, No. 914,678 of March 9, 1909, and No. 1,240,503 of September 18, 1917. The defendant was estopped by a consent decree in a prior suit from denying the validity of the patents; and the sole issue, therefore, was one of infringement. The validity of both patents has also been adjudicated by the Court of Appeals of the First Circuit in the unreported case of Walter E. Skelton et al. v. Ames Shovel & Tool Co. (opinion rendered April 13, 1928[1]), and the validity of the second patent by the District Court of the United States for the Eastern District of New York in Skelton et al. v. Igoe Bros., 29 F.(2d) 837. In these cases, a number of the prior patents to be described later were considered.

The patents relate to wooden D handles for shovels, spades, and other tools. Such handles are of two general types, the old style or solid wooden D handles, and the so-called split D handles. Solid handles are cut out of a slab of wood; and the handgrip is strengthened by a central transverse rivet extending through the grip and the sides of the handle. The handgrip runs crosswise of the grain of the wood, so that it is likely to split along the grain. The

[1] Not for publication.

cross rivet in the grip sometimes comes loose. The handle is somewhat heavy and clumsy; and it is wasteful in the making, because the block from which it is cut is of necessity as wide as the solid wood handle, although the stail or shank portion is much narrower.

Prior to the Skelton patents, a split D handle was devised to overcome the disadvantages of the old style. The upper end of the wooden handle was divided or split, and the bifurcated pieces or side arms were bent away from each other and forked. A handgrip was inserted between the ends of the prongs. The handgrip was strengthened as in the old style by a transverse connecting rivet which also extended through the side arm terminals. It was thus possible to have the grip run lengthwise of the grain of the wood. The handle was lighter, and there was a saving in the material consumed. Still, there were disadvantages. When stress was applied to the handgrip in the use of the shovel, the stress was communicated to the side forks through the center rivet, and hence the handle was no stronger than the bearings at the ends of the rivet. The problem of a suitable connection of the handgrip with the upper ends of the side arms was introduced. The parts to be united are necessarily small because the handgrip must fit the hand, and the side arms can only have half the cross section of the shank or stem. The handgrip must be fitted close to the extremities of the side arms, and they must not project above it. The whole must be capable of withstanding the rigors of severe use.

Frederick Skelton, the patentee, had been engaged in Canada in manufacturing a shovel with a solid wood D handle. About 1907 he invented a split D handle, and secured United States patent No. 888,541, issued May 26, 1908, prior to the patents in suit. The construction consisted of a covering cap or ferrule made from a casting to be placed over the end of each prong of the fork. The caps were smaller at the top than at the bottom, and the prongs were tapered and driven into the caps with a wedged fit. The ends of the forks were not covered, since the caps were open at both ends. In order to provide for the attachment of the handgrip, each cap was fitted on the inside with a ring integral with it, into which the corresponding end of the handgrip was placed. In this structure, the pressure of an inward thrust upon the handgrip was brought to bear upon the protecting caps through the rings around the ends of the grip. The strain on the cross rivet was thus relieved to a considerable extent, but, even if the fit was absolutely tight, the rivet would receive to some degree a thrust in either direction. This device, however, was never put upon the market, because it was not found to be entirely practicable. Weather conditions would cause the ends of the side arms to shrink and become loose from the caps, and when this happened, the rivet holes in the side arms would become enlarged and the prongs would work up and down, and sometimes protrude through the upper ends of the caps.

In order to overcome these defects, Skelton produced the device disclosed in his second United States patent No. 914,678, the first patent in suit, which has gone into extensive commercial use. In this construction the caps or ferrules are substantially cup shape in design, open at the bottom and closed at the top. The tapering ends of the branches butt against the closed tops of the caps and are enclosed therein. This fit is important because it relieves the cross rivet of the strain when an inward push is applied to the handgrip. Claim 2 of the first patent in suit, which is the only claim therein relied upon, illustrates this point. The claim is as follows:

"2. In a tool handle, the combination of a hand grip, a bifurcated shank providing arms, closed cup shaped ferrules on the ends of said hand grip, adapted to receive and completely conceal the ends of the arms of said bifurcated shank, and a rivet passing through said ferrules, the bifurcated shank and hand grip."

Although this construction had considerable practical success, it was still found to be somewhat deficient. The reinforcement of the first patent failed to relieve the cross rivet of strain in two respects. It did not eliminate the strain thereon of an outward pull on the handgrip, and it did not prevent a prying and twisting action of the handgrip, due to the fact that there was but a single rivet by which the grip was attached to the caps. Hence the caps would tend to turn, and eventually become loose. To offset these difficulties, Skelton designed the device which is the basis of United States patent No. 1,240,503, the second patent in suit. He added an extension of each cap integral therewith, which lies against the outer face of the fork arm projecting downwardly and is secured to the arm by a rivet at its lower end. This device strengthens the assembled parts against the twisting action of the

handgrip and against an outward pull, transferring it first from the grip to the cap and then to the lower rivet. Thereby the long center transverse rivet in the grip is relieved from the greater part of the strain of an outward pull to which it is subjected in the construction of the first Skelton patent. Claim 1 of this patent, the only claim in suit, is as follows:

"1. A D-handle comprising a wooden stem having diverging arms and a grip-bar inserted therebetween, and a metallic reinforcement for each arm comprising a ring fitting over the end of the grip-bar, a cap-piece concealing the upper end of the arm and a reinforcing strip secured to the outer face of the arm."

The Baldwin Tool Works, the defendant below in this suit, manufactured handles during the period 1920 to 1925 under the patents in suit under a license agreement of July 6, 1920. The plaintiff company gave to the defendant the benefit of its experience in the manufacture of the handle, and disclosed the methods employed in its factory. On or about April 14, 1922, the defendant notified the plaintiffs that it had become convinced that the patents were invalid, and would therefore discontinue the payment of royalties. As a result, suit on the patents was instituted by plaintiffs against the defendant on July 5, 1922, in the Southern District of New York. Later, on September 11, 1922, the defendant notified the plaintiffs that it had abandoned its attack on the validity of the patents and desired to continue under its former royalty agreement, and to make settlement for accrued royalties. Accordingly, a consent decree, establishing the validity of the patents, was rendered on December 7, 1922, and a new license agreement was executed on May 3, 1923. Frank M. Baldwin, the president of the defendant company at that time, died in the year 1924. He was succeeded by his son, William H. Baldwin, who, in 1925, notified the plaintiffs that his company was no longer making a split D handle under the patents, and would therefore pay no further royalties. In the meantime, the defendant company had developed, through one of its superintendents, L. E. Wilson, another device, for which United States patent No. 1,548,823 was issued on August 11, 1925; and defendant declared that it was manufacturing its goods under the Wilson patent and not under the patents in suit. The present suit was then instituted.

The shovel handle of the defendant con-forms in the main to the structure disclosed by the Wilson patent, differing only in minor details immaterial in this discussion. The resemblance of the manufactured article to that of the plaintiffs and to the disclosures of the patents in suit is striking. The difference is confined to that part of the cap or ferrule on each side arm of the handle which receives the end of the transverse handgrip. In both structures, the cap is stamped out of sheet metal as a flat piece by a suitable blank die, and is then drawn into proper shape. The form of the Skelton cap, when first stamped out, is shown by the accompanying figure 3 taken from the specification of the second patent in suit (Skelton, No. 1,240,503):

The Wilson cap, at this stage of manufacture, resembles it in every particular, except that the ears 12 are omitted. When the blank in the Skelton patent is drawn into a cup shape or socket to reinforce the end of the prong, the ears 12 are drawn together and welded so that they co-operate with the turned-in margin of the top of the blank to form a complete ring which encompasses and receives the end of the handgrip. In the Wilson blank, the metal cap is shaped in the same way to receive the end of the prong, and, when this is done, the turned-in margin forms an incomplete ring surrounding the end of the grip for about three-fourths of its circumference, leaving the underside of the end of the grip uncovered. Over this incomplete ring there is then placed a separate complete ring whereby the incomplete ring is reinforced under all conditions of use.

The similarity and the differences between the structures are illustrated by the

subjoined illustrations from the second Skelton patent in suit and the Wilson patent.

(Skelton, 1,240,503)        (Wilson, 1,548,923)

Fig. 2            Fig. 3

Figure 2 is from the second Skelton patent in suit, and represents the finished metallic reinforcement seen from the inside. The upper part of the blank has been cupped at 15 to fit over and completely cover the end of the side arm. The ears or lugs 12, depicted in dotted lines, have been bent and joined together by welding at 13 to form the recessed ring 14 designed to receive the end of the grip. Between the lower part of this ring and that part of the cap which covers the outside of the prong, there is an opening, so that the cap may be placed on the end of the prong. There is a round opening in the center of the top part of the blank for the transverse rivet. The extension 11 is the additional feature in the second patent which distinguishes it from the first patent in suit. This extension is secured to the side arm by a rivet at the lower end.

Figure 3 represents the finished metallic reinforcement of the defendant's structure. The recessed ring 13 is similar to the ring 14 in the Skelton illustration, except that it is incomplete and is designed to embrace about three-quarters only of the circumference of the end of the grip; but it is adapted to extend within the surrounding separate complete ring 9 by which it is reinforced and strengthened. The structure is further strengthened by the turning in of the lowermost portion of the partial ring section to form two inturned lugs which bite into the side arm as the cap is driven down upon it, and secure a more effective binding action between the cap and the end of the grip bar. Comparing the two structures as a whole, it may be said that the defendant's handle differs from that of the second

Skelton patent in suit, in that the collar member of the metallic reinforcement that embraces the end of the hand grip is composed of a single unitary complete ring in the Skelton patent, but is composed of an inner three-quarter ring and a separate complete ring fitting over it in the defendant's handle. The case turns on the significance of this difference.

The District Court correctly found that the defendant's handle performs the same functions as that disclosed in the second Skelton patent. The separate parts of the split handle are securely held together. The ends of the side arms are protected by the covering caps, and the transverse rivet in the grip bar is relieved from the stress of thrusts and pulls, and from a twisting movement of the handgrip. It was suggested in defense that in the defendant's handle a thrust against the outer surface of the grip is transmitted only in part to the cap reinforcement, because the complete ring cannot be tightly engaged on its lower side with the adjacent surface of the grip bar. If this were true, it would merely tend to show that the defendant's handle performs this service less efficiently; but the fact is not so, for, in addition to the effect of the inturned lugs, it is certain that the outer complete ring holds the ends of the incomplete ring tightly against the under surface of the grip, so that the incomplete ring does not spread, but successfully resists the pressure of the downward thrust.

Considering the language of the claims relied on by the plaintiffs, we note that the defendant's structure is covered literally by the terms of the second claim of the first patent in suit. There are two claims in this patent, but neither contains a limitation to a one-piece construction. Nor is there such a limitation in the first claim of the second patent in suit, although two of the three remaining claims do contain such a restriction. Comparing the elements of the first claim with the defendant's structure, it is seen that all of them, with perhaps one exception, are literally described therein. The defendant's handle comprises a wooden stem with diverging arms, a grip bar, a metallic reinforcement for each arm, comprising a ring fitting over the end of the grip bar, and a cap piece concealing the upper end of the arm, and a reinforcing strip secured to the outer face of the arm. The only question that can possibly arise as to the literal application of this claim is whether the extension of the defendant's cap which surrounds

the end of the grip for three-quarters of the circumference, when taken together with the separate ring, may be considered as described in the words of the claim as "a ring fitting over the end of the grip bar." Whether or not the defendant's device in this respect is literally described, it seems to be an equivalent construction, unless, for some reason, the patent must be limited to the precise form of mechanical device disclosed.

Infringement is made out, unless the difference in the defendant's handle is so significant that it cannot be truly said that "it performs substantially the same functions in substantially the same way to attain the same result" as the structures disclosed in the patents. Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935. If the difference is not material, infringement of both patents must follow, for the ring portion in both patents is identical, and the extension of the cap provided by the second patent is quite literally copied in the defendant's device. The District Judge concluded, in view of the crowded condition of the art, that the Skelton patents were limited to the particular construction shown, and he held specifically that the claims of both Skelton patents should be limited to a one-piece closed cap construction. Therefore he decided that the defendant's reinforcement cap, comprising two parts, the cap proper and the separate ring piece, did not infringe either patent in suit.

It was entirely proper for the court to take into consideration the state of the prior art; for, although the defendant was estopped by the consent decree in the earlier suit from denying the validity of the patents, this estoppel did not preclude a denial of infringement; and, to determine such an issue, it is admissible to show the state of the art involved. Noonan v. Chester Park Athletic Club Co. (C. C. A.) 99 F. 90, 91. As Chief Justice Taft said, when speaking of the similar estoppel against the assignor of a patent in Westinghouse Co. v. Formica Co., 266 U. S. 342, 349, 351, 45 S. Ct. 117, 119, 69 L. Ed. 316:

"The rule * * * is that an assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned or granted as against any one claiming the right under his assignment or grant. As to the rest of the world, the patent may have no efficacy and create no right of monopoly; but the assignor cannot be heard to question the right of his assignee to exclude him from its use. * * *

"Of course, the state of the art cannot be used to destroy the patent and defeat the grant, because the assignor is estopped to do this. But the state of the art may be used to construe and narrow the claims of the patent, conceding their validity. The distinction may be a nice one but seems to be workable."

See, also, the opinion of Judge Parker in Frick Co. v. Lindsay (C. C. A.) 27 F. (2d) 59.

When we come to consider the prior art, it is at once apparent that the scope of the patents must be confined to the reinforcing cap, since split wooden D handles, with wooden grips and center rivets connecting them together, were well known before Skelton. Moreover, there were prior patents which disclosed metal reinforcement caps around the ends of the forks. The United States patent to Howard, No. 17,837 of 1857, the British patent to Newton, No. 1664 of 1862, and the United States patent to Skelton, No. 888,541 of 1908, all showed split wooden D handles with reinforcement caps around the ends of the prongs, provided with rings that inclosed the ends of the grips. The caps, however, lacked the closed top, and therefore did not protect the ends of the prongs or transmit to them the stress of an inward thrust, relieving the strain upon the rivet. The United States patent to Walter, No. 601,690 of 1898, provided a reinforcement cap which had a ring portion on a closed cap to cover the end of the prong. But the top part of the cap was not connected with the portion that extends around the side of the arm, and hence the top could be easily bent back by the side arm when the handle was subjected to a thrusting movement, so that the rivet got practically the full force of the strain. The United States patent to Jones No. 967,197 of 1910, and the corresponding British patent, No. 28,553 of 1909, disclosed a closed cap, but it was not provided with a ring around the end of the handgrip, and hence it had no effect in relieving the center rivet of stresses. The Lundy British patent, No. 27,012 of 1913, provided for the reinforcement of the handle by a continuous strap of metal set in a groove extending across the top of the handle and downwardly along the outer face of each arm to a cross rivet just below the beginning of the fork, but it did not provide closed caps for the ends

of the prongs or rings to receive the end of the handgrip. The center rivet in the grip was not relieved of the stress from a thrust.

Then there were prior patents relating to solid D handles, such as United States patent to Milligan, No. 206,814 of 1878, and the British patent to Park, No. 10,003 of 1908, which provided for the reinforcement and protection of the top and sides of the handle by metal caps; but obviously the problem which confronted Skelton was not considered, for solid handles are in one piece, and the stress of thrusts and pulls is not communicated through the center rivet in the grip to the side arm.

Finally, there was a group of patents of which the United States patent to Cummings, No. 172,263 of 1876, the British patent to Hunt, No. 2,188 of 1892, the United States patent, No. 479,588 of 1892, to Flanegan, and the United States patent to Rogers, No. 906,462 of 1908, are examples. They related to handles in which the prongs or side arms were made entirely of metal, with recessed cups at the ends to receive a wooden cross grip. They possessed the function of communicating the stress of a thrust or pull directly from the cross grip to the side arms without strain upon the center rivet. But they pertained to structures of quite a different kind, and were not concerned with the difficulties confronted by the patentee in providing a strong and durable split wooden D handle.

It is clear that none of these patented structures combines all of the functions of the Skelton caps; and, if we were obliged to consider the question of validity, we should be inclined to determine it in the plaintiff's favor, as the courts in the earlier cases have done. It is equally manifest that the scope of the Skelton patents is not restricted to a one-piece structure by the patents we have described; for in each one of them the reinforcing cap was made in one piece. They cannot be distinguished from the Skelton patents in this respect, and it cannot be said that the latter were granted because they substituted a single piece for a plurality of parts shown by the earlier disclosures.

Two other prior patents are relied on by the defendant in which the reinforcing caps are made in two pieces, namely, the United States patent to Johnson, No. 262,788 of 1882, and the United States patent to Skelton and Pickard, No. 1,240,502 of 1917. The Johnson patent provides for the reinforcement of the side arms of a split wooden D handle by metal plates on both sides of each arm which extend from the ends of the arms to a cross rivet somewhat below the handgrip. The inner plate on each side is placed between the end of the handgrip and the side arm. This plate is not provided with a ring member to receive the end of the grip, but is provided with three inturned dogs which engage the end of the handgrip and prevent it from turning on the center rivet. The plates do not furnish a protection to the end of the prong because they are separate and have no connecting piece over the end. To some extent, the inturned dogs which project from the inner plates into the end of the handgrip serve to relieve the center rivet of the strain of thrusts and pulls; but it is not as strong a construction as the ring around the end of the handgrip would be. Nor does the structure relieve the center rivet of a prying force applied to the grip. In short, this structure, lacking the ring and the closed cap, does not perform the functions of the patents in suit; and therefore it cannot limit their scope on the theory that its disclosures are avoided only by the substitution of a one-piece for a two-piece construction.

The Skelton and Pickard patent, also owned by the plaintiffs herein, was especially relied upon in the District Court as limiting the field of the patents in suit. This patent was issued on September 18, 1917, the same day as the Skelton patent, No. 1,-240,503, the second patent in suit, with which it was copending in the Patent Office; but the application of the former was filed January 22, 1917, while the application for the latter was filed February 19, 1917. Notwithstanding the later filing date of the Skelton invention, the plaintiffs asserted that in fact it preceded that of Skelton and Pickard, and offered testimony tending to prove the allegation. But the master, to whom the case had been referred, did not find the evidence sufficient to sustain the claim, and the District Judge approved his finding. It is not necessary for us to pass on this issue of fact, for, even if we assume the priority of the Skelton and Pickard patent, it does not serve to restrict the second patent in suit as the defendant contends. The Skelton and Pickard structure comprises the short cap of the first Skelton patent in suit with a separate addition. The latter part consists of a metal strap which underlies the cap and is bent over the upper end of the side

arm or prong. From this point, the strap extends downwardly along the outer surface of the prong, to which it is fastened by a rivet at its lower end. Below the cap, the side strap is similar to the extension of the cap shown in the second Skelton patent in suit.

In two respects the Skelton and Pickard handle does not perform the same function as that shown in the second patent in suit. The side straps do not relieve the center rivet in the handgrip of the strain of an upward pull. The reason is that such a strain is transferred from the end of the handgrip to the short cap, and, by it, to the center rivet. The separate elongated strip which reinforces the side of the prong extends only over the end of the prong, and does not overlap the end of the handgrip. In the next place, the Skelton and Pickard cap does not protect the center rivet from the effect of a twisting motion upon the grip. The short cap has only a single point of attachment to the handle, namely, the center rivet, and therefore the handgrip is free to rock when twisted. In the second Skelton patent, the cap has two points of attachment to the prong; namely, the center rivet and the lower rivet at the end of the extension. These differences in function are sufficient to distinguish the two patents granted on the same day; and it cannot be truly said that a single instead of a two-piece construction is the only difference which Skelton made in his second patent in suit over his joint invention with Pickard.

On the other hand, it is true that the only material feature which differentiates the defendant's product from the structures of the patents in suit is the substitution of two parts in place of one. We conclude that infringement is made out, and that the plaintiffs are entitled to an injunction and to a decree for an accounting. It is no answer to their case to point out that the inventions are not of a broad and primary character, and that the range of equivalents is necessarily limited; for every patent has some range of equivalents, unless form is made an indispensable thing. Frick Co. v. Lindsay (C. C. A.) 27 F.(2d) 59, 62. Form is not indispensable here, for it has been shown by the different structures of the parties themselves that the same functions may be performed by either a single or a two-piece device. The claims in suit do not expressly limit the structure to a unitary form; and the limitation in other claims may not be used to restrict those upon which the plaintiffs rely. Symington Co. v. National Mal. Casting Co., 250 U. S. 383, 39 S. Ct. 542, 63 L. Ed. 1045; Pangborn v. Sly Mfg. Co. (C. C. A.) 284 F. 217.

Nor is it necessary to hold that the Wilson patent, belonging to the defendant, is invalid in order to find infringement of the patents sued upon. It may be assumed that it involves some patentable distinction. But it does not follow that the defendant may use it without suffering the penalties of infringement. The grant of a patent does not confer a right to make, use, or sell the patented article, if it infringes an earlier grant. The right conferred is only to exclude others from those privileges. Frick Co. v. Lindsay, supra.

The decree of the District Court will be reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.