BEACHEY & LAWLOR v. McWILLIAMS.

(Circuit Court of Appeals, Seventh Circuit. May 20, 1915.)

No. 2108.

PATENTS &#9882;&#8594;328—VALIDITY AND INFRINGEMENT—PANEL BOARD FOR ELECTRICAL POWER DISTRIBUTION.

The McWilliams patent, No. 920,490, for a panel board for electrical power distribution especially adapted for use in large office buildings and for a system of electrical power distribution, was not anticipated and discloses invention; also *held* infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by Arthur C. McWilliams against Beachey & Lawlor. Decree for complainant, and defendant appeals. Affirmed.

Appellee filed his bill for injunctional and other relief, which was granted. This appeal involves claims 1, 5, 6, 9, and 10 of patent No. 920,490, granted May 4, 1909, to A. C. McWilliams for a panel board for electrical power distribution. The claims read as follows, viz.:

"1. A metering panel board having crossed permanent conductors, the conductors running one way being for the meter circuits and those running across them being for the consumption circuits, said conductors being adapted to be electrically connected at their points of crossing, one set of conductors being arranged alternately, so that one conductor leads toward one edge of the board for connection to its circuit, while the conductors on either side thereof lead toward the opposite edge of the board for connection to their circuits."

"5. A metering panel board having parallel conductors adapted for electrical connection to the consumption circuits, said parallel conductors being arranged alternately, so that one conductor leads toward one edge of the board, while the adjacent conductor leads toward the opposite edge of the board, and other conductors adapted for electrical connection to the meter circuits, said meter conductors being parallel to each other and arranged in a plane parallel to the plane of the consumption conductors, said conductors being adapted for electrical contact at their intersections substantially in the manner and for the purpose described.

"6. A system of electrical power distribution including consumption circuits extending from districts of consumption to a panel board, bus bars on said board connected to said consumption circuits, meter circuits, other bus bars on said board connected to said meter circuits, means for interchangeably connecting the bus bars associated with the consumption circuits with the bus bars belonging to the meter circuits, one of said sets of bus bars being provided with terminals arranged along the two edges of the board, and connected to their bars alternately, substantially as described."

"9. A panel board having fuses arranged along the vertical edges of the board, a conductor bar running horizontally inward from each of said fuses and being arranged alternately so that one bar is associated with a fuse at one edge of the board and the adjacent bar is associated with a fuse at the opposite edge of the board, and another set of bars arranged at an angle to the first and having proper terminal connections, one of said sets of bars being for the consumption circuits and the other set for the meter circuits, said bars being adapted for electrical connection at their intersections."

"10. In a metering panel board, a set of meter circuit conductors and a set of consumption circuit conductors, the bars of one set being arranged at an angle to the bars of the other set and said bars being adapted to be interchangeably connected at their points of intersection, one set of bars being provided with terminals so arranged that adjacent bars are associated with terminals on opposite sides of the board."

---

&#9882;&#8594;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Claims 1, 5, 9, and 10, it will be seen, call for a mechanical device—a metering panel board carrying various permanent appliances, such as crossed permanent conductors and the specific alternate arrangement of one set of permanent conductors; while claim 6 covers a system of electrical power distribution as a whole, implying everything necessary for a complete system, read in the light of the specification. It includes the panel board with its bus bars connected with its consumption and meter circuits, etc. "The object of the invention," says the patentee, "is to facilitate the interchanging of the consumption circuits with the meter circuits, so that any consumption circuit may be readily connected to any meter and as many consumption circuits as desired may be readily connected to any one meter. It is also an object to provide a compact, economical metering panel board usable in connection with such a system."

Figure 1 of the drawings of the patent is herewith reproduced:

The device is described in the specification, beginning at line 31:

"The apparatus here illustrated is arranged for a three-wire system, although the invention is equally applicable to a two-wire system. The supply mains $a$, $b$, $c$, which are respectively positive, neutral and negative, are adapted to be connected respectively to the positive, neutral and negative bus bars $d$, $f$, $e$, through the switch $g$ in the ordinary manner.

"The parts are mounted on the board $A$, which may consist of marble or any other suitable insulating material. In the drawings are shown six pairs of meter circuit terminals $h^1$, $h^2$, $h^3$, $h^4$, $h^5$, and $h^6$, each one of which is adapted to have a meter $H$ connected thereto. One of each pair of said terminals is connected to a main, the remaining terminal being connected respectively to one of the stationary conductors $i^1$, $i^2$, $i^3$, $i^4$, $i^5$, $i^6$, which in the present design are mounted on the back of board $A$, and arranged vertically. A third wire $H^1$ is shown to be connected from the neutral bus bar $f$ to the meter $H$ to furnish a shunt current for operating them in the customary manner.

"Arranged transversely to the meter circuit conductors $i^1$, $i^2$, $i^3$, $i^4$, $i^5$, $i^6$, are the consumption conductors $j^1$, $j^2$, $j^3$, $j^4$, $j^5$, and $j^6$, which in the present design are mounted horizontally on the front side of board $A$. Each of these last-mentioned conductors mounted on the front of the board is arranged to be fuse-connected to the adjacent terminal of a consumption circuit by means of a shallow binding screw $o$ or other suitable device, which does not penetrate into the board or to the bars $f^1$ or $f^2$ behind, but merely holds the fuse in contact with conductors $j^1$, $j^2$, etc. Said consumption circuits may include lamps, as shown, or any other kind of load. Said bars $f^1$ and $f^2$ are permanently mounted on the board, preferably on the back thereof, and by means of the plugs or screws $m$ which penetrate the board, are adapted to be fuse-connected to the remaining terminals of the pairs of consumption circuit terminals $k^1$, $k^2$, $k^3$, $k^4$, $k^5$, and $k^6$. Thus in each pair of consumption circuit terminals one is connected by a penetrating plug $m$ to one of the mains (the neutral one in this instance), while the remaining terminal is adapted to be permanently fuse-connected by means of a binding screw $o$ to one of the set of permanent consumption circuit conductors $j^1$, $j^2$, $j^3$, $j^4$, $j^5$, or $j^6$. By the word 'permanent' is meant such parts as are intended to be part of the apparatus itself in distinction to the wiring or other parts that are intended to be altered to suit requirements for rearrangement of metering. In consequence of the above, in each meter circuit in this three-wire design one terminal of each pair of meter terminals is connected to either the positive or negative supply main and the other terminal is connected to its respective conductor $i^1$ or $i^2$, etc.; while in each consumption circuit one terminal is connected to the neutral supply main and the other terminal is connected to one of the conductors $j^1$ or $j^2$, etc. Each one of the meter conductors $i^1$, $i^2$, etc., crosses each one of the consumption conductors $j^1$, $j^2$, etc., and therefore in order to complete the circuit through a meter and a consumption circuit it is only necessary to connect one of the conductors $i^1$ or $i^2$, etc., with a conductor $j^1$ or $j^2$, etc. In the present case, provision is made for this by aperturing the board $A$ at the different crossing points to receive plugs or screws $n$, $n$, as best shown in Fig. 3.

"In operation, suppose it is desired to throw consumption circuit $k^2$ onto the meter circuit $h^2$, it is merely necessary to put in a plug or screw $n$ at the intersection of conductors $i^2$ and $j^2$ as shown, among other combinations, in Fig. 2. If it is desired to substitute consumption circuit $k^4$ this may be done by removing the aforesaid plug and placing it at the intersection of conductors $i^2$ and $j^4$. All consumption circuits may be connected to meter circuit $h^2$ if desired by putting in a plug at each of the intersections of conductor $i^2$ with the conductors $j^1$, $j^2$, $j^3$, $j^4$, $j^5$, and $j^6$. In a similar manner any consumption circuit may be readily connected to any meter, and as many consumption circuits as desired may be connected to any one meter. It will be noted that no change of wiring of any kind is required, the entire operation consisting in simply inserting or removing one or more plugs as the case may be."

The device is particularly meant for use in connection with the lighting plants of large office buildings, where many light wires are required, which must often be placed in new combinations. The patentee has provided for economy of space by arranging his conductor bars alternately, so that one bar leads to a terminal at one edge of the panel board, while the adjacent bar leads to a terminal at the other edge of the board. This doubling up or staggered plan serves to greatly shorten up the length of the panel board from what its length would be were only one side employed—quite a desirable result in locations where space is to be economized. Switches and fuses may be included as parts of the permanent structure.

Prior to 1903 light terminals consisted only in exposed ends, which were both dangerous and confusing. On November 20, 1903, G. H. Jones filed his application for a patent panel board for electrical distribution, which was issued to him on April 12, 1904. By this device, the light wire ends were compactly gathered into a panel board wherein there are arranged meter and board fuse-protected contacts and the necessary conductors and conducting bus bars, switches, etc. The contacts, however, are made by manually fastening the proper wire end to its binding post and otherwise connecting up the parts by hand. This was a great improvement upon the prior art, but still left much exposed wire and some confusion. It did away with a great deal

of the inconvenience of the old wire-adjusting method and covered the general idea of housing the wire ends and forming a serviceable light wiring switchboard. McWilliams, two years after Jones' application, invented the combination of the patent in suit, wherein he did away with all exposed wires and eliminated confusion, by substituting for Jones' hand adjustment of the ends of the light wires an adaptation of what is termed the "Liviss Commutator," or the "Western Union Grid," shown in patent No. 90,270, granted to C. S. Jones May 18, 1869, for a telegraphic switchboard, in Sheehy patent, No. 284,247, granted September 4, 1883, for a switchboard for electric light stations, and in Farnham patent, No. 413,276, granted October 22, 1889, for central station calling apparatus. When asked whether there was any other difference in substance, between the G. H. Jones panel board and that in suit, than that Jones has the so-called jumper wires, while McWilliams has the cross-bars and connectors, appellee's expert, McElroy, replied: "Broadly speaking, and as I understand your question is intended, that is correct."

It was stipulated on the hearing that appellant's device was like that of appellee's. The only errors assigned go to the alleged error of the court in holding that claims 1, 5, 6, 9, and 10 aforesaid were good and valid in law, and in ordering an accounting.

Lincoln B. Smith, of Chicago, Ill., for appellant.

Howard M. Cox, of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The device of the patent in suit is the result of the effort of the patentee to meet more satisfactorily some of the exigencies growing out of the constantly increasing application of electricity to practical uses. The installation of light plants in large buildings involves questions of efficiency, convenience, and economy of space, not to mention attractiveness in appearance. The G. H. Jones patent made a great advance upon the prior art by compacting the wire ends upon the panel board and simplifying their adjustment when changes for lighting purposes were desirable. That patent seems to have solved the question of space and efficiency, but not that of safety and convenience, since it left the matter of connections, in large part, to manual adjustment, thereby exposing the manipulator to danger from shocks. By reason of disarrangement of some of the wires, there appears to have resulted both confusion and delay in the connecting up of the jump wires to their proper winding posts. It was with a view to eliminating these defects that McWilliams took out the patent in suit. He made no claim to the discovery of anything new in the movement or direction of electrical currents. He simply provided a device which would adapt itself conveniently to the already well known requirements of the currents, as disclosed in the prior lighting art and its allied arts. This much he accomplished over Jones; i. e., he made it possible for one not skilled in the art to adjust any number of light wires in such combinations as to suit the demands of any given situation without danger to the person, or to the building, or to the lighting plant. This had not been done before. The so-called "Liviss Commutator" had been used in the telegraphic art, but not in combination with a modern light system. Sheehy says:

"The object of my invention is to provide means for readily interchanging the connections of the respective generator and electric lighting circuits for

the purpose of placing one or more light circuits in connection with a single generator or of connecting two or more generators with a single electric light circuit and at the same time remove the danger to which the operator is frequently exposed, of receiving an electric shock by accidentally completing the circuit of the generator through his body, as well as to avoid the liability of the completion of a short circuit between two adjacent conductors of opposing potential through the framework and mechanism of the switchboard."

In this device there is shown a series of horizontal metallic conducting rods arranged in pairs, constituting the terminals of a series of electric generators, and a series of vertical conducting plates separated by air spaces from the former and constituting the terminals of a system of electric light circuits, in combination. In order to apply Shechy's lamp circuit to any given meter circuit at the points of crossing of the rods and plates, it would be necessary, in the opinion of the expert, to connect the same at two points for each circuit, which seems to be the case. Moreover, no means is shown for supplying electrical energy to either set of rods or plates. The device fails to suggest a metering panel-board, and has only half the capacity of McWilliams' patent. It does not, in our judgment, serve to lead, nor has led, any mere mechanic to the device of the patent in suit, whose novelty consists in the combination of the elements therein disclosed, notwithstanding it had been public for more than 14 years.

The Farnham patent aforesaid, for a central telephone station calling apparatus, makes no provision for the metering of, nor clearly shows any consumption circuits. To assume such to exist would leave no provision for the supply of current to the board. In the upper left-hand corner of its drawing, Fig. 1, is shown what the patent calls a distributing switchboard. "By employing the switchboard *A* and varying the position of its plugs," says the patentee, "any desired generator can be connected with any particular section of switchboard, as the exigencies of the service may require, or several switchboard sections may be connected to one generator." Here, also, if double or two-sided electrical currents should be employed, it would be necessary to make two connections at two points of intersection. It hardly seems possible that mere mechanical skill could adjust this cross-bar switchboard to the Jones device. Indeed, we look upon the adaptation of the Leviss commutator to the G. H. Jones switch as a substitute for the jumper wires as involving some patentable degree of invention. It has added much to the safety and convenience of the Jones patent and the art. It cannot be deemed a mere aggregation, for the reason that its presence pervades the whole panel board system. It comes to us with all the prestige and presumption attending the government grant. It supplies a real need. It serves a new and beneficial purpose.

The decree of the District Court is therefore affirmed.