## WESTINGHOUSE ELECTRIC & MFG. CO. v. METROPOLITAN ELECTRIC MFG. CO.

(Circuit Court of Appeals, Second Circuit. May 7, 1923.)

### No. 275.

1. **Patents ⬚328—920,490 and 1,137,413, held invalid.**
    The McWilliams patents, No. 920,490, claims 1, 5, 6, 9 and 10, for panel board for electrical power distribution and No. 1,137,413, claims 1, 6, and 9, for a metering panel board, *held* invalid.

2. **Patents ⬚112(2)—Recitals conclusive evidence of taking necessary or statutory oaths.**
    In the absence of fraud, recitals in letters patent are conclusive evidence of a taking of the necessary or statutory oaths.

3. **Patents ⬚99, 101—What are "disclosures" and "claims."**
    What any patentee has invented is theoretically what he discloses. and the "disclosure" is the specification while a "claim" is a definition of that which has been disclosed in the specification; the disclosure telling how to do that of which the claimant attempts definition.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Claim.]

4. **Patents ⬚99—"Man skilled in the art."**
    Theoretically the celebrated "man skilled in the art" knows how to do what the inventor did when he has perused the disclosure.

5. **Patents ⬚101—Claims must be supported by specifications.**
    A claim not supported by the specification is a bad claim, and a disclosure which tells how to do a thing not claimed is a misfortune for the patentee.

6. **Patents ⬚109—Additional allegations of fact in disclosure need supplemental oath.**
    If a new claim need for its justification or validity an additional or new disclosure, such additional allegations of fact need a supplemental oath, not because they are to be used for an amended or new claim, but because they tell some fact of invention not told before (Rev. St. § 4892 [Comp. St. § 9436]); but a claim fairly derivable from a sworn disclosure is good, whether originally presented or introduced by amendment.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Westinghouse Electric & Manufacturing Company against the Metropolitan Electric Manufacturing Company. Decree for defendant, and plaintiff appeals. Affirmed.

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit is upon patent 920,490 (claims 1, 5, 6, 9, and 10), for "panel board for electrical power distribution," and also No. 1,137,413 (claims 1, 6, and 9), for a "metering panel board." For reasons considered in our opinion, the trial court dismissed the bill as to both patents, and plaintiff appealed.

Drury W. Cooper, Thomas J. Byrne, and Victor S. Beam, all of New York City, for appellant.

C. P. Goepel, of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge. The earlier of the patents at bar was sustained in Beachey v. McWilliams, 224 Fed. 717, 140 C. C. A. 257, and this litigation has been before us on application for injunction pendente lite as Cutter v. Metropolitan, etc., Co. (C. C. A.) 275 Fed. 158. There were then four patents counted on; two have been dropped. The nature of the patented device of No. 920,490 is fully set out in both the decisions above cited, and the claims in suit may be found at large in the Beachey Case.

Considerations and discussion of the patent at bar begin as usual with discovery of what the devices are really for, and of what about them required original thought. Mere clever words must be stripped away. The phrase "metering board" is such arrangement of words. The devices have nothing to do with meters per se; the meters shown are functioning just as usual; the inventions relate wholly to the diversion or direction of current, so that it will pass through some particular meter of usual construction to be measured in the usual manner.

A diagrammatic showing of the device of the older patent is found in 224 Fed. 718, 140 C. C. A. 258, and is of itself sufficient to prove that what the inventor desired was to facilitate the interchanging of circuits, so that any "consumption circuit" (i. e., any circuit with a load thereon) might be connected with any meter. It further proves that the accomplishment of this desire is by an arrangement of vertical and horizontal conductors, which may be "pegged" into connection at any intersection, thus putting any meter and any load on the same electric circuit, with the meter (so to speak) "at the gate" thereof. It is this capacity for making circuits by connecting these conductor bars at the proper intersections which is the invention, and the embodiment of that thought is properly a "panel board."

[1] In our opinion this inventive thought was fully and completely embodied in the so-called "Essex board," a panel put into the Essex Hotel in New York City in 1901. The fact of construction at that date is, we think, admitted; if not, it is fully proved, and the proof in our judgment shows a complete anticipation. This defense was not presented in the Beachey Case.

It is sought to differ plaintiff's board from the Essex construction by the staggered relation of the consumption bars. Of this it is enough to say that we do not think there is any substance in the attempted differentiation, or, to put it differently, we perceive nothing patentable over Essex in McWilliams' staggered arrangement.

As for patent 1,137,413, we agree with the lower court that no invention is exhibited. The device shows the same intersecting conductors as in the first patent in suit, and in many other known and older panel boards; but the conductors are grouped according to intended polarity; i. e., the positive "bus bars" occupy one-half of the board (as diagrammatically displayed), and the negative the other. The staggered relation is abandoned. This grouping is thought to make the board more "fool proof." It may be so, but to us the convenience of arrangement is plainly within the capacity of any electrical mechanic.

We have now sufficiently shown our accord with such findings of fact as were made below, and have disposed of this case. It remains, however, to comment upon what we think an erroneous inference drawn by the lower court and others from the language used on the previous appeal herein (275 Fed. 158), and from somewhat similar language in Waterbury, etc., Co. v. Prentice (C. C. A.) 286 Fed. 358, 361.

On the former appeal it appeared as probable that only by an amendment of the specification introduced long after filing on oath as required by R. S. § 4892 (Comp. St. § 9436), did McWilliams (or his solicitor) disclose those facts or particulars which supported (if anything did) some of the claims in suit, and such amendment was not accompanied by supplemental oath. Our only holding was that the question whether the suggested history of events did or did not show that McWilliams made oath to a "different subject-matter" from that finally disclosed was something that should be passed on at final hearing.

To this holding no exception can be or has been taken; but from some language used arguendo the inference was drawn by the learned court below that as to the later patent here in suit—the claims having been introduced by amendment, and there being "no supplemental oath to these claims" (Patent Office Rule 48)—the patent was for that reason invalid. While we think no such doctrine properly derivable from our decision, or the cases cited therein, we shall now state our view on the point. It is, of course, true that the force of rule 48 must be obtained from some statute; but we fail to see that it does more than explain and enforce the controlling act of Congress. R. S. § 4892.

By that section every applicant shall make oath that he believes himself to be the inventor of that for which he "solicits a patent"; i. e., of the invention which he discloses. Therefore, if in point of fact an amendment be introduced after statutory oath made which discloses anything not theretofore so disclosed, there is obviously no oath to support the new disclosure, and that is in the teeth of the statute. The rule no more than provides a method of complying with both the spirit and the letter of R. S. § 4892, and the form (No. 22) of supplemental oath contained in the current (1922) edition of the Patent Office Rules, makes this very clear, for the applicant and affiant is required to swear that his amendatory matter was "invented before he filed his original application," etc.

[2] It was held in Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33, that, in the absence of fraud, recitals in letters patent are conclu-

sive evidence of the taking of the necessary or statutory oaths. Examination of the cases (all cited in Walker [5th Ed.] § 122) will show that this rule has always been applied to matters of irregularity, suggested as having occurred in the Office. 'But the broad words used in the Seymour Case cannot be used to nullify what may be, called the rule of Steward v. American Lava Co., 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139, viz. (as put by the reporter):

"A patent cannot be sustained when the theory and method are introduced for the first time in unverified amended specifications."

The facts (215 U. S. 168, 30 Sup. Ct. 50 [54 L. Ed. 139]) are instructive; it being found that the patentee's attorney introduced "not merely the theory, but the mode of applying it," into the specification by an unverified amendment. Thus the court found that the original specification did not disclose the invention that was specified in the unsworn amendment. Therefore, 'said the court:

"The amendment required an oath that [the patentee] might have found it difficult to take, and for want of it the patent is void."

This subject has been considered in cases many of which are referred to in our previous decision (275 Fed. at page 163) and others collected by Sanborn, J., in Kiefer, etc., Co. v. Unionwerke (D. C.) 218 Fed. 847, at page 856. The rule as we accept it is summarily set forth in Michigan, etc., Co. v. Consolidated Co., 67 Fed. 121, 125, 14 C. C. A. 232, 236, by holding that an—

"applicant is required to make oath that he believes himself to be the original inventor of the improvement for which he solicits a patent. Cody [the patentee] made such oath on making his original application, but did not make oath in respect to the matter brought in by the amendment. No doubt it is competent to amend the specifications while the application is pending, so long as it is done within the scope of the original application; but it is not competent under color of this privilege, to introduce new matter."

[3, 4] What any patentee has invented is theoretically what he discloses, and the disclosure is the specification. A claim is a definition of that which has been described in the specification. A disclosure tells how to do that of which the claim attempts definition. Theoretically, the celebrated "man skilled in the art" knows how to do what the inventor did when he has perused the disclosure. Whether one infringes a patent primarily depends, to be sure, upon consideration of the claims; but no man would know how to practice the invention by reading the claims, any more than a student would learn the proper demonstration of a theorem by reading the theorem itself.

[5, 6] A claim not supported by the specification is a bad claim, for reasons that have nothing to do with R. S. § 4892. A disclosure which tells how to do a thing not claimed is a misfortune for the patentee; but that also has nothing to do with section 4892. That statute requires that one shall swear to his invention, and all of it; if he only swears to a part, and his attorney puts in the rest, it is exactly like any other yielding to the temptation of improving an affidavit after execution, by inserting additional allegations of fact. A claim is not a disclosure; but every claim must be justified by the disclosure. If, therefore, a new claim needs for its justification or valid-

ity an additional or new disclosure, such additional allegations of fact assuredly need a supplemental oath, not because they are to be used for an amended or new claim, but because they tell some fact of invention not told before.

Changes of language, not changing the substantial meaning as it stood before amendment, and even changes of meaning, narrowing the scope of invention described, do not infringe the statute. Whether any given new or amendatory matter does or does not enlarge or add to the disclosure as it stood before amendment is a question of fact—often a nice one. Such a question has been raised over the file wrapper contents of 920,490. It does not seem to us a very serious question, and the prior use now established renders it immaterial, and discussion of unnecessary facts is never advisable.

Result is that a claim fairly derivable from a sworn disclosure is good, whether originally presented or introduced by amendment; and such claim needs no supplemental oath.

Decree affirmed, with costs.