## SAMSON–UNITED CORPORATION v. SEARS, ROEBUCK & CO., Inc.
### No. 247.

Circuit Court of Appeals, Second Circuit.
April 10, 1939.

Writ of Certiorari Denied May 29, 1939.

See 59 S.Ct. 1039, 83 L.Ed. ——.

Pennie, Davis, Marvin & Edmonds, of New York City (W. Brown Morton and Raymond B. Canfield, both of New York City, of counsel), for plaintiff-appellant.

George L. Wheelock, of New York City (Arthur W. Carlson and Max W. Zabel, both of Chicago, Ill., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is an appeal from a final decree of the District Court for the Eastern District of New York dismissing the bill in a suit on a patent on the ground that no infringement was proved. The suit is the usual one in equity and was brought by the plaintiff to which as assignor of the inventor, Abe O. Samuels, patent No. 2,095,223 for a fan was issued on October 5, 1937. The named defendant sold fans claimed to infringe in the Eastern District of New York but is only a nominal party as the defense is being conducted by the manufacturer of the accused fans, the Excel Auto Radiator Company of Chicago, Ill.

The peculiar characteristics of the patented fan are imparted to it by the use preferably of rubber blades so attached to a base, or hub, that freedom from danger of injury to objects which might be expected to come into contact with unguarded fan blades in motion is combined with efficiency as a displacer of air and quietness in operation. These desirable features were obtained by using flexible blades which, when cupped by insertion into arcuate grooves in the hub, were of sufficient rigidity to withstand the axial thrust required for rotation against air to displace the air in such volume and at such speed as to give satisfactory service; were resilient enough to return to normal shape when relieved from the effect of any distorting force; and at the same time were so pliable that they would yield to rigid objects which might by chance come into contact with them in operation in such a way that no harm would be done. Another important feature of construction was a rib at the base of each blade which extended outwardly from the plane of the blade on each side to overlap the inner edges of the sides of the slots in the hollow hub into which the blades were inserted so as to hold the blades immoveable by centrifugal force when the fan was in motion.

This combination of pliable fan blades with a hollow hub of hard material slotted as described produced a fan so desirable that it quickly went into comparatively wide-spread use and several manufacturers took licenses. It was at first made in what may be called the household size but soon was made in the small size suitable for defrosting the windshields of automobiles and there it has practically supplanted the old metal-bladed fans which had to be supplied with guards.

The need for a rotating fan comparatively harmless when operated without a guard had previously been recognized and attempts to produce one had been made. Apparently, however, none of them had met with commercial success.

That it was not new to use rubber, as well as other pliable materials for making fan blades, is shown by the British patent No. 3,203 granted to Siemens Brothers & Co., Ltd., in 1899. But that patent relied upon centrifugal force in operation as the means for holding the blades in air propelling position and the disclosure is too vague to be an anticipation since it teaches little, if anything, but that "said blades of soft flexible material may be of any desired form and arrangement, preferably they are attached to the axis in an oblique or

helical position, so that when expanded by centrifugal action they will assume the form of screw-blades". Stating the idea of making a fan with blades of soft flexible material sustained in operating position by centrifugal force without showing how to do it successfully is not anticipation. Standard Cartridge Co. v. Peters Cartridge Co., 6 Cir., 77 F. 630; American Graphophone Co. v. Leeds & Catlin Co., 2 Cir., 170 F. 327.

Somewhat pliable rubber had been used also as tips for airplane propeller blades to minimize the danger of damage if such blades hit a hard object. This is shown in U.S.Patent No. 1,308,527 granted to Nilson July 1, 1919. There was certainly the embodiment here of some pliability but it was so disproportionate in degree to that of the patent in suit that in reality nothing of the Samuels invention was disclosed. Besides that, though both these small fans and airplane propellers do displace air, the actual purposes for which they are used differ so that one would hardly expect to find much in common and that proves to be the fact in this instance. Nilson was trying only to lessen the danger of injury to the propeller and apparently did no more. At least he disclosed nothing which was utilized by this patentee. Our attention has also been called to the patent No. 612,598 for a screw-propeller granted to Wanless on October 18, 1898. It made use of a kind of slot for attaching the blades to the hub but all was of metal designed for use in water and even the slots were radically different in shape and only served as a means for attaching the blades to the hub. They did nothing to change the shape of the blades.

None of the other references come any nearer to anticipating except the Turner patent No. 1,392,029 which was not considered in the Patent Office. Yet that is so unlike what Samuels did that it is of little moment. Turner made a fan for use in textile mills by mounting rubber paddle-blades along a shaft which was installed at the top of warping machines to blow away the dust. He made his shaft hollow so that steam might be supplied to heat the air in cold weather "when the air currents set in motion by the fan would be liable to chill the operatives". He did have some air displacement combined with safety due to the pliability of the paddle-blades but aside merely from the use of rubber blades had nothing in common with Samuels.

The last of the prior art which should be noticed is patent No. 1,042,431 granted to Griggs on October 29, 1912, for a fan attachment for machines. It was used some, though not much, and was made of a band of flexible material to be put over the rim of the hand wheel of a sewing-machine and held in place by draw-strings. To the outside of the band were sewed blades of flexible material like felt preferably in a line diagonally across the ring. When the hand-wheel spun as the machine was used, centrifugal force extended the blades causing them to blow some air toward the operator and when the machine stopped the blades lost their operating position. Their ability to remain in air displacing position except as held there by centrifugal force was practically nonexistent. Griggs produced only a crude form of what may have been disclosed in the British patent above mentioned and the radical departure of Samuels from what Griggs did clearly required inventive thought.

The claims in suit are Nos. 1 to 10, inclusive, and 13 and 18. No. 3 is sufficiently typical. It reads:

"3. A fan comprising a hub with radially projecting blades formed of material sufficiently flexible to bend readily without permanent distortion, the inner end portions of said blades being maintained sufficiently rigid by said hub and of a configuration to increase the resistance of said blades to axial thrusts without materially increasing their resistance to deformation upon encountering an object in their path of rotation".

All the claims were held valid below but none were found to be infringed with the possible exception of claim 7 which was construed so narrowly, that being thought necessary to give it validity, that the fans sold by the defendant were held not to infringe.

Claim 7 differs from claim 3, however, in no substantial way unless the substitution of one named kind of flexible material, rubber, makes it do so. It reads:

"7. In a fan, a hub, rubber blades, means engaging portions of said blades for maintaining them in a normally radial and substantially cupped position on said hub, said blades being of such flexibility and resilience as to be self-restoring upon distortion from normal position and of suffi-

cient rigidity when assembled to substantially maintain a predetermined pitch position on the hub".

While the mere use of rubber in making fan blades was no invention, the use of a flexible material, which might of course be rubber, in the way the patentee taught how to use it to obtain the desired results by attaching it in his way to the hub to increase its utility as a fan blade without destroying in any appreciable way its inherent safety qualities, was what the patent law is designed to protect. Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952. And though claim 7 is, indeed, limited to rubber we can perceive no reason why it should otherwise receive a construction more limited than, for instance, that to which claim 3 is entitled or why an accused device employing rubber might not infringe both. Nor does the limitation to rubber as the flexible material make the claim one simply for any rubber bladed fan. The other language limits the claim to rubber blades of a fan formed and held as disclosed.

The patentee made a valuable contribution to the art which quickly won marked recognition and the patent claims should be construed, if possible, so as to preserve the substance of the patent. National Battery Co. v. Richardson Co., 6 Cir., 63 F.2d 289; Auto Vacuum Freezer Co. v. William A. Sexton Co., 2 Cir., 239 F. 898.

The accused fans are made with rubber blades fastened together as blanks somewhat like a four-leafed clover. There are small button-like protuberances near the bases of the blades. The hub is made in two pieces with arcuate slots when the separate parts are joined and with depressions into which the buttons on the blades fit. When the blank of blades is placed in proper position between the two parts of the hub and those parts are joined together the assembled fan is equipped with blades of flexible material so curved by the distortion of the bases in the arcuate slots of the hub and held there against centrifugal force by the embedded buttons that a fan having the peculiar characteristics of the patented fan is the result. And this result is obtained by equivalent means. It is no departure from the patent to use a blank of blades instead of single blades or a two-piece hub instead of a one-piece hub to accomplish the same result. Line Material Co. v. Brady Electric Mfg.

Co., 2 Cir., 7 F.2d 48; Berke v. Courtney Folding Box Corporation, 2 Cir., 93 F.2d 284. The accused fans are built to, and do, perform like the patented fan by the use in their construction of the substance of the patent disclosure. The embedded buttons are the equivalent of the base ridges of the blades of the patented fan which being joined together at their bases were given added resistance to centrifugal force and infringe the claims so limited.

Decree reversed with directions to enter a decree holding all claims in suit valid and infringed.