## SAMSON–UNITED CORPORATION v. E. A. LABORATORIES, Inc.
### No. 592.

District Court, E. D. New York.
Oct. 16, 1939.

Pennie, Davis, Marvin & Edmonds, of New York City (W. B. Morton, of New York City, of counsel), for plaintiff.

Duell & Kane, of New York City (David S. Kane and Philip T. Dalsimer, both of New York City, of counsel), for defendant.

BYERS, District Judge.

Motion for a preliminary injunction in a patent cause. The jurisdiction of the court is not in question.

Seemingly the critical question concerns the efficacy to establish non-infringement, of metal strips affixed to the rubber blades of the defendant's fan, adjacent to the interior surface of the slots in the cup shaped center structure, through which the blades emerge to the position in which they perform the function of creating currents of air when the fan is operated.

The defendant's patent No. 2,155,611 is dated April 25, 1939, and the plaintiff's patent No. 2,095,223 was issued on October 5, 1937. It was held valid and infringed in Samson-United Corporation v. Sears, Roebuck & Co., Inc., 2 Cir., 103 F.2d 312, decided April 10, 1939. That decision reversed a decree of this court, in which validity was accorded to claims 1 to 10, inclusive, and 13 and 18, but infringement was not thought to have been demonstrated. The opinion for reversal found the offending structure to constitute an infringement of plaintiff's patent, and all claims in suit were held to be valid.

The defendant in that case did not enjoy such protection as would have been afforded to the holder of letters patent, and in that respect the present defendant's position is obviously less vulnerable.

Here the court is required to say, in effect, that the second patent in point of time was improvidently issued, which is a serious undertaking on such a motion as this.

The configuration of the blades of the fan, and their position with reference to the hub of the structure, are of the first importance, for reasons that are more frequently thought of in connection with the position of the blades of a ship's propeller.

Validity of the plaintiff's patent claims was referred to by Judge Campbell (D.C., 23 F.Supp. 971, 974) in these words: "* * * it seems to me, that the Patent, if sustained, can be sustained only because of detail structural claims. * * * but taking into account the looseness of the language employed [in the claims], and considering the Prior Art that was cited by the Patent Office, it would seem to me, that what was in the Examiner's mind was the enlarged mounting portion at the inner ends of the blades of the Patent in suit, and the manner in which the blades could be slid sidewise into the slot, and this appears from the repeated rejections of prior claims. * * * the many rejections * * * convinced me that it was not intended to grant the Patent, broadly for a rubber-bladed fan."

Validity was commented upon by the Circuit Court of Appeals in this language [103 F.2d 315]: "While the mere use of rubber in making fan blades was no invention, the use of a flexible material, which might of course be rubber, *in the way the patentee taught how to use it to obtain the desired results by attaching it in his way to the hub to increase its utility* as a fan blade without destroying in any appreciable way its inherent safety qualities, was what the patent law is designed to protect." (Citing cases) (Italics supplied)

These views seem to point to the recognition of patentable invention in the nature of the assembly of the blades, their configuration and relationship to the hub or rotatable member.

In discussing the offending structure in that case, the higher court disposed of one feature of the defendant's blades, i. e., that two are made from one piece of material crossing at the center, in these words: "It is no departure from the patent to use a blank of blades instead of single blades."

As to the infringement there found, the court said: "When the blank of blades is

placed in proper position between the two parts of the hub and those parts are joined together the assembled fan is equipped with blades of flexible material *so curved by the distortion of the bases in the arcuate slots of the hub* and held there against centrifugal force by the embedded buttons [of the blades] that a fan having the peculiar characteristics of the patented fan is the result." (Italics supplied)

It is thought that these extended quotations are justified because the present controversy sharply presents the asserted difference between the blades of the defendant's structure and those of the plaintiff's in respect of the medium of their conformation, and the reason for their maintaining the position as presented by so much of their surfaces as protrudes from the hub.

Clearly the plaintiff's blades are cupped in order to preserve a degree of stability, but Judge Campbell said this was not invention (page 973 of 23 F.Supp.) and his views as to that were not the subject of comment above.

That cupping or curving results from the distortion of the bases of the blades in the arcuate slots; that is, the slots both create the curve and hold the blades in the desired relation to the hub, once they are anchored.

This defendant attributed different offices to the metal strips which are riveted to the blades of its fan, at the base thereof, at about the interior surface of its cup shaped hub, adjacent to the slots in the hub, through which the blades emerge; and it is that diversity of function, referred to in certain of its claims, that renders it difficult on these papers to conclude whether the metal strips are patterns of pure artifice, or elements of mechanical integrity.

In claim 1, they are described as projections forming part of the blade. If that were all, infringement would be clear, within the quoted portion of the Sears, Roebuck opinion.

In claim 2, they are said to maintain "at least the blade portions adjacent which they are disposed in a curved condition". So much is inconsequential, in view of the manifest office of the slots as to the whole blade.

In claim 3, the projections maintain the cover plate against displacement. If anything, this is no departure from plaintiff's blade rib.

Claims 4 and 5 assert that the metal strip maintains the blade body "in a condition of transverse curvature". In claim 5, the additional quality is asserted of preventing "a withdrawal of said blade through said slit".

The latter, of course, closely touches plaintiff's structure, and would not avoid infringement, but the former assertion is less easily disposed of. Since the blades of necessity take the shape of the slot, the configuration achieved by the metal strip before threading into the slot (claim 1) cannot be determinative, and the contribution of the metal strip to the final result seems to be of little or no consequence.

In claim 6, the strips are said "to impart to said blades a similar curvature transversely of their bodies", because that is the way the strips are curved. This seems to be a slightly more involved statement than claim 5, but not to add anything of value.

Claim 7 is not essentially different from its immediate predecessor.

On the claims of the patent alone, it is difficult to observe how the defendant can prevail on the question of infringement.

The affidavits in opposition include one by the patentee, who minimizes claim 1 of his patent which says that his fan assembly includes in combination "a cup shaped member formed with spirally extending slots" and "blade portions * * * said blade portions being threaded into said slots * * *", by referring to the cup shaped member as "the masking hub".

He has prepared a model fan in which the blades are mounted on a backing plate alone, there being no cup shaped member, and of course no slots through which the blades are threaded. He says that fan performs in all respects as does the accused structure. Since it is not the latter, its only place in this motion is to demonstrate that the blades are held in their essential relation to the hub of the fan, without aid of the slots in the "cup shaped member".

It is not such a fan as the plaintiff presently seeks to enjoin.

Professor Ballard's affidavit in opposition is to the same effect, and he is of the view that, because the hub of the defendant's fan serves no function "in the forming or configuration of the fan blades", one of the essential elements of plaintiff's invention is not present in defendant's structure.

The impression presently produced by the defendant's patent and structure is that there is clear infringement of plaintiff's patent, and that the metal strips on the blades are present for the sake of appearance only, and that, if they are curved as proclaimed, they are a wholly unnecessary part of the entire fan, and were resorted to by way of avoiding an obvious adaptation of plaintiff's invention.

The argument addressed to validity is of course mere surplusage. The French patent to Heller merely says that blades "made of flexible threads, in textile material for example, spreading out from a hub in such a way that the sheet of threads of each blade will be arranged with an appropriate inclination or incidence with respect to the plane of rotation".

"Appropriate" is an argumentative, not to say elastic, term.

The Gilbert and Gosling patents add nothing to what has been previously considered.

The plaintiff may have a temporary injunction as prayed, and, if counsel cannot agree upon the amount of plaintiff's bond, it will be fixed upon settlement of the order.