**BALABAN et al. v. POLYFOTO CORPORATION.**

No. 15.

District Court, D. Delaware.

Sept. 26, 1942.

474

Lawrence Bristol (of Watson, Bristol, Johnson & Leavenworth), of New York City, and J. Rankin Davis, of Wilmington, Del., for plaintiff.

Samuel E. Darby, Jr. (of Darby & Darby) of New York City, and E. Ennalls Berl, of Wilmington, Del., for defendant.

JONES, Circuit Judge, specially assigned.

The plaintiffs sue for alleged patent infringement and the defendant answers setting up (1) patent invalidity, (2) noninfringement and (3) file wrapper estoppel. From the evidence adduced at trial, we make the following

### Findings of Fact.

1. Alexander Balaban, one of the plaintiffs, is the owner of the patent in suit, No.

2,083,215, issued to him June 8, 1937, for a "photographic diffusing device for enlarging and projection printing".

2. The other plaintiff, Robert B. Wheelan, is the owner of license rights under the Balaban patent, exclusive in the field of operating photographic portrait studios in department stores. Wheelan has owned and operated, beginning some ten years prior to 1937, under the name Wheelan Studios, a chain of photographic portrait studios located in various department stores in different cities with a central laboratory at New York City. The pictures are taken at the studios and the negatives are developed and the prints made at the central laboratory.

3. Wheelan obtained his rights under the Balaban patent in July, 1937, and proceeded to apply the Balaban disclosure to his commercial operations.

4. The defendant, Polyfoto Corporation, is a corporation of the State of Delaware. It was organized for the purpose of operating and commenced the operation of a photographic portrait business about May, 1937, with studios in department stores and a central laboratory at Bridgeport, Connecticut. The defendant adopted the particular character of practice charged to infringe in the middle of 1938.

5. In the photographic art prior to Balaban there were two general types of printing, viz., contact printing and projection or enlargement printing. The patent in suit is concerned with the latter.

6. In contact printing the negative is in contact with or so close to the sensitized print paper that the ultimate picture is of the same size as the negative, and the print is characterized by the same clarity of detail, or lack of it, as was in the negative.

7. In projection or enlargement printing the sensitized print paper is located some distance from the negative, the arrangement being, in order, a light source, the negative spaced therefrom with the emulsion or image bearing surface located away from the light source, a lens system, and then the sensitized print paper. The extent of enlargement is dependent upon the lens adjustment and the distance between the lens and the print paper, the greater the distance the greater the enlargement, about two feet being a typical distance in operation.

8. The physics and chemistry of photography tend to emphasize wrinkles and blemishes. To counteract this and also to render the subject of a portrait print more pleasing to the sight, it had been common practice many years prior to Balaban's development of the invention of the patent in suit to resort to what was known as "retouching". The common procedure in this respect was to add darkening material as by lead pencil to areas on the negative, so that light thrown toward the sensitized paper in printing was correspondingly held back at the treated lines or areas, and the final print made lighter at those points. It was also common procedure to make enlarged prints from retouched negatives by all-over diffusion in an effort to reduce the effect of undesired markings. Such all-over diffusion produced prints in which the eyes and other features were rendered hazy and indistinct and lost their appearance of "sparkle". Retouching of prints was also resorted to by adding darkening material to light areas and removing material from dark areas of the prints as by etching, necessitating subsequent coating of the prints with lacquer to conceal the retouching.

9. Such retouching methods had the disadvantages of being tedious and requiring peculiar skill, and in general resulted in the loss of the rounded modeling effect of features, the dulling or loss of delicate lines and of clarity in such important areas as the eyes, mouth, nostrils, hair and clothing of the image of the subject,—a condition which was aggravated in the case of the less skilled retouchers. Defects in a negative are necessarily emphasized and exaggerated in an enlarged print therefrom.

10. The Balaban patent discloses and claims a successful practical solution of the difficulties encountered in "retouching". In accordance with the teachings of the patent, in the projection printing of portrait negatives, a selective diffusing mask is placed adjacent to the image bearing side of the negative on the side opposite to the light source. The mask is selectively treated so as to have areas which are clear registering in respect of the parts of the negative desired to be printed sharply, such as the eyes, mouth, nostrils, hair and clothing, and other areas which are translucent and serve to diffuse the image rays passing there-through. The diffusing surface of the mask is located an appreciable distance from the image bearing surface of the negative. In a case where the mask is directly on the surface of a transparent glass supporting plate, the thickness of the glass plate may serve to provide the desired spacing; greater or less spacing may be accomplished

476

by using glass of different thicknesses or by introducing a small air space. In general the greater the distance between the diffusion mask surface and the image surface of the negative, the greater the diffusion of the parts registering with the translucent areas.

11. The Balaban patent describes, by way of example, two specific ways of producing the selective diffusion mask, viz.: (1) providing transparent sheet material, such as glass or film, with a surface having translucent areas by applying thereto at the desired areas a suitable substance such as fats, oils, waxes, soaps or the like; and (2) providing transparent sheet material, such as glass or film, having a ground or frosty translucent surface, and rendering desired areas of the ground surface clear or transparent by some appropriate method, as by applying thereto a suitable substance such as balsam fir, turpentine, varnishes, oils or many other materials. The same end result as to the diffusing element and the ultimate photographic print is reached by either procedure.

12. Following the Balaban disclosure results in a simple device for and procedure of making enlarged prints of greatly improved quality having a sharpness and clarity of detail and tone in selected areas, such as the eyes, mouth, nostrils, hair and clothing, and a smooth, soft, satiny or velvety appearance over other larger areas such as the forehead, cheeks, chin and neck, with a retention of modeling and depth of dimension, and in general an over-all effect of brilliance and character with an elimination of marks due to grain and blemishes in the negative. The attainment of such results is limited to projection printing. The invention cannot be effectively practiced in contact printing.

13. Defendant at its inception had obtained rights under a camera patent owned by Polyfoto Internationale, Ltd., operating in England and Denmark. As part of the agreement defendant received technical data as to methods of printing comprising the most advanced type known and used by that company.

14. Defendant's practice from inception until about early summer of 1938, in accordance with the data supplied by Polyfoto Internationale, Ltd., was to do the retouching directly on the enlarged print. This comprised in the main etching away with a knife some of the deposited silver of the print to create a lighter appearance on the print at that point, and filling in lighter areas of the print with crayon material. After this the print was coated with a lacquer to cover up the evidence of the retouching. Diffusion was commonly employed also in exposing the print, the diffusion being by means of a uniform diffusing disk which gave a general all-over diffusion with a consequent loss of sharpness and detail.

15. Plaintiff Wheelan, subsequent to issuance of the Balaban patent on June 8, 1937, and after he had acquired his license of the patent, wrote Mr. Lester H. White, president of defendant company, on August 11, 1937, suggesting that Mr. White send him an untouched negative from which he would make some prints to demonstrate results attainable with a new process. Mr. White accepted the offer, sending Mr. Wheelan a negative bearing 48 miniature size poses and asking that Mr. Wheelan supply prints in 5" x 7" and 8" x 10" sizes of a designated pose. Mr. Wheelan sent him on August 13, 1937, two each such prints made in accordance with the Balaban patent disclosure.

16. Defendant's complete operations include the purchasing of plain transparent glass and treating (such as grinding) one surface thereof so as to render it translucent all over and subsequently clarifying selected areas, where sharpness of definition is desired, by the use of a crayon of waxy material which renders the area transparent. This glass plate provides about the right spacing between the image bearing side of a negative and the translucent-transparent mask surface for use of the Balaban invention in making enlarged prints.

17. The composition of the waxy crayon used by the defendant is asserted to be a secret and the subject of a pending patent application by one P. J. Berggren. The crayon, when applied to the translucent surface of the ground glass, renders transparent the area to which it is applied. Defendant concedes that it follows the "Type 2" procedure described in the specification of the Balaban patent in suit.

18. The subject matter of the Balaban patent set out in the claims thereof is not anticipated by the prior art.

19. The subject matter disclosed in the specifications and drawings and covered in the claims of the Balaban patent in suit required for its production the exercise of inventive skill.

20. All of the essential features of the Balaban invention were fully disclosed in the original application for the Balaban patent in suit as prepared and filed by the inventor himself, and were supported by the oath of the inventor. No "new matter" was introduced during the prosecution of the Balaban application, such changes as were made being fully supported by and consistent with the original application and oath as filed in the Patent Office.

21. The claims of the patent in suit disclose a new and useful discovery by Balaban and each of the claims of the patent in suit is infringed by the operations and means employed by the defendant.

22. There is nothing in the Balaban file wrapper which requires that the claims be interpreted to exclude the type of procedure followed by the defendant.

### Discussion.

█ The idea of placing a mask or diffusing element between the negative and the sensitized paper (intended to record the print) with the mask separated from the image bearing side of the negative by a thin transparent element, to effect selected diffusion, was new with Balaban. The light, after passing from its source through the negative and the transparent element, is diffused, in the areas desired, by the mask's translucent markings as the light strikes the sensitized paper below. Thus objectionable blemishes are blurred out by the light diffusion and a smooth complexion results in the areas affected by the diffusion from the translucent markings of the mask, while the sharpness of the remaining features of the subject is retained. This arrangement of elements for enlarging photographic portraits by projection printing, as disclosed by the patent in suit, was new, and the highly satisfactory results obtained thereby, with an elemination of the old retouching process, determined a usefulness for the device which, coupled with its novelty, constituted invention. So far as the prior art discloses the principle of the invention was not known or used by others here or abroad prior to Balaban's discovery.

In its amended answer the defendant cited as anticipatory of the patent in suit twenty-two prior United States patents, five publications, and alleged prior use by one company and its employees. At trial, the defendant abandoned all of the art cited except two of the patents and one publication, viz. the Snapp patent (No. 1,092,-545) granted April 7, 1914, the Wilson patent (No. 1,353,690) granted September 21, 1920, and a publication by Burrows & Colton on "The Art of Retouching", 2d American Ed., 1888, pp. 76 to 79.

The Wilson patent (No. 1,353,690), which, incidentally, applies to contact printing rather than projection printing, provides for a ground glass element interposed between the source of light and the negative. In that position, the translucent element serves to modify all of the light going to the negative rather than to diffuse part of the light as it leaves the negative and proceeds to the sensitized paper. That the Wilson device will not achieve the results of the Balaban invention is very evident from the exhibits in this case as well as from a consideration of the function to be performed by the ground glass where the Wilson patent places it.

In the Snapp patent (No. 1,092,545) tissue paper with pencil markings is interposed between the light source and the negative, and then another tissue paper without any markings is interposed between the negative and the sensitized paper. This process likewise applies to contact rather than projection printing. The pencil markings on the first tissue paper serve to diminish the amount of light passing through certain portions of the negative. The other tissue paper, in so far as it may diffuse the light after it has left the negative, does so to the extent of diffusing all of the light after it has left the negative rather than portions thereof selected for diffusion. Here again the process cited as prior art controls only the quantity of light and does not selectively diffuse light as it leaves the negative. The teaching of the Snapp patent will no more produce the results of Balaban's method than will the Wilson patent.

█ The process described in the Burrows & Colton publication is open to the same distinction as pointed out in respect of the Wilson and Snapp patents. In addition to that, as the Burrows & Colton disclosure is merely a publication, it is discredited under the rule that an inoperative device (and the evidence shows that that device was inoperative) disclosed in a printed publication cannot anticipate a later operative device. Permutit Co. v. Harvey Laundry Co., 2 Cir., 279 F. 713, 719.

█ A device is new within the meaning of the patent laws unless all of its elements can be found in a single prior description or structure where they do the

same work in substantially the same way. Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482, 487. As we have already pointed out, the prior art cited by the defendant in this case does not do the same work as the patent in suit and, consequently, not in substantially the same way. An invention is not anticipated by an accidental, incidental or unintentional use of some of its features unless the benefits or ensuing results from such use are appreciated or recognized. Tilghman v. Proctor, 102 U.S. 707, 711, 26 L.Ed. 279; Edison Electric Light Co. v. Novelty Incandescent Lamp Co., 3 Cir., 167 F. 977, 980. The fact that, by transposing parts of the Wilson patent, the order of the Balaban invention can be obtained is not anticipation, for Wilson neither disclosed a combination such as the Balaban device nor did he appreciate the results to be obtained from such a combination.

 Furthermore, the disclosures of the prior art cited by the defendant are not in such full, clear and concise terms as to enable one skilled in the art to practice the Balaban invention without making extensive experiments. Mere suggestion from the prior art (and there is not even that in this case) is not sufficient to constitute anticipation. The prior art in order to be anticipatory must show how to do the thing disclosed. Wm. B. Scaife & Sons Co. v. Falls City Woolen Mills, 6 Cir., 209 F. 210, 218; Canda v. Michigan Malleable Iron Co., 6 Cir., 124 F. 486, 492; Westinghouse Air-Brake Co. v. Great Northern R. Co., 2 Cir., 88 F. 258, 263. In adjudging the sufficiency of a prior disclosure it is the prior device itself that is the anticipation and not merely the words by which it is described. As Judge Woolley pointed out in Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 31 F.2d 427, 431, "A patent relied upon as an anticipation must itself speak. Its specification must give in substance the same knowledge and the same directions as the specification of the patent in suit." In the instant case the prior art cited shows the interposition of a translucent element between the source of light and the negative rather than between the negative and the sensitized paper. The fact that the prior devices might have been adapted to carry out the purpose of the Balaban invention is not anticipation. City of Milwaukee v. Activated Sludge, Inc., 7 Cir., 69 F.2d 577, 588. Yet that in effect is the manner in which the defendant seeks to use the cited prior art in the instant case. As the Supreme Court has said, in order to constitute prior art anticipation it is necessary to show that the prior device, if operated in the manner taught, would necessarily perform the process under question or that its adaptation would occur to the ordinary mechanic operating the device. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 424, 22 S.Ct. 698, 46 L.Ed. 968; Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658. In the present case, if the prior art is followed in the manner it discloses, it would not achieve the results of the Balaban device, nor has the defendant illustrated that the ordinary mechanic would have conceived that a transposition of the parts shown by the prior art would achieve the result sought and attained by Balaban's invention. The patent in suit was not anticipated by the prior art.

 The defendant's contention that the patent is invalid because claim 4 thereof is misdescriptive, inoperative and without utility lacks any merit. The description of claim 4 is sufficient, for if it does contain any errors they are no more than such as would be detected at once and their remedy known to any person skilled in the art. Matheson v. Campbell, 2 Cir., 78 F. 910, 913. The successful application of the patent to commercial use by Wheelan studios sufficiently demonstrates that. Any ambiguity in claim 4 is readily explainable from the specifications. Carnegie Steel Co. v. Cambria Iron Co., supra, 185 U.S. at page 432, 22 S.Ct. 698, 46 L.Ed. 968. Moreover, an infringer is estopped to deny the utility and operability of the patent. Kansas City Southern R. Co. v. Silica Products Co., 8 Cir., 48 F.2d 503, 505, certiorari denied 284 U.S. 626, 52 S.Ct. 11, 76 L.Ed. 533; Dunkley Co. v. Central California Canneries, 9 Cir., 7 F.2d 972, 976, 977; Boyce v. Stewart-Warner Speedometer Corporation, 2 Cir., 220 F. 118, 126, 127. The infringement carries with it an admission of the operability and utility of the patent.

 On the question of patent validity the defendant further asserts that essential features of the claims were not disclosed in the original specifications and that therefore they are not supported by the inventor's oath. In the course of amending the specifications and claims during the prosecution of the Balaban patent application, the words "at the image bearing side of the negative" were introduced

into the application at the suggestion of the Patent Office. This the defendant contends is an essential feature introduced into the patent without support of the oath of the inventor and that thereby the patent is invalid because of the inventor's failure to comply with the requirements of the patent laws. But the particular matter was not a new feature first introduced into the patent after the filing of the application. It is rather a restriction or refinement of the original specifications. Where a new claim involves a change in actual invention and is not merely a matter of mechanical detail, the absence of an oath to such an amendment is fatal to the patent. George Cutter Co. v. Metropolitan Electric Mfg. Co., 2 Cir., 275 F. 158, 162. But in the instant case the change amounted to mere mechanical detail. An actual change in an invention is not to be imputed where there has been no more than a contest between the applicant and the Patent Office in respect of the aptness of expression or the diminution of the scope of the claims. Simpson v. Newport News Shipbuilding & Dry Dock Co., D.C.S.D.N.Y., 18 F.2d 318, 323. The very case cited by the defendant in support of its contention in this connection draws the distinction we have already pointed out. In Westinghouse Electric & Mfg. Co. v. Metropolitan Electric Mfg. Co., 2 Cir., 290 F. 661, 665, the court said that "Changes of language, not changing the substantial meaning as it stood before amendment, and even changes of meaning, narrowing the scope of invention described, do not infringe the statute. Whether any given new or amendatory matter does or does not enlarge or add to the disclosure as it stood before amendment is a question of fact—* * *." And again the court said (290 F. at page 665) that the "Result is that a claim fairly derivable from a sworn disclosure is good, whether originally presented or introduced by amendment; and such claim needs no supplemental oath." In the case of the patent in suit the claims are fairly derivable from the disclosure sworn to by the inventor and the amendment made required no supplemental oath.

██ In the opinion of the court, the patent in suit is valid.

██ We come next to the defendant's contention that its device does not infringe the Balaban patent. Infringement is a question of fact. Stilz v. United States, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202;

Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 301, 312, 29 S.Ct. 495, 53 L.Ed. 805. As not everything disclosed by a patent is infringible, but rather the claims thereof which measure the invention, it becomes necessary in passing upon a question of infringement to have recourse to the claims. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122; White v. Dunbar, 119 U.S. 47, 51, 52, 7 S.Ct. 72, 30 L.Ed. 303.

The defendant admits that the claims of the Balaban patent disclose two ways of producing a diffusing mask. These were referred to at trial as "Type 1" and "Type 2". From that necessary concession as a premise, the defendant then submits that "the two types of masks disclosed by the [Balaban] patent are direct antitheses to each other" and then contends that the claims of the Balaban patent are limited to the "Type 1" method of producing the mask, wherefore the defendant, which admittedly uses the "Type 2" method, cannot be deemed to have infringed. This argument confuses the method of making the mask with the invention. To achieve the mask called for by the Balaban patent and thus obtain the desired effect of selective diffusion it makes no difference whether the mask is made according to "Type 1" or "Type 2".

"Type 1" employs a transparent element upon one surface of which a mask is constructed by means of translucent markings, while "Type 2" employs a transparent element one entire surface of which is made translucent by grinding. The excess surface translucency under "Type 2" is then blocked out by the use of a waxy crayon or some other suitable substance thus rendering that portion of the element again transparent and leaving the necessary translucent marks to form the mask on the surface of the transparent element. Nor does the defendant help to an understanding of what is actually done in making a mask according to the "Type 2" method when it refers to the transparent element (one surface of which only has been rendered translucent by grinding) as a "translucent plate". It is not that. Manifestly, if the defendant's, or any other, process or method employed a truly translucent plate, it would be impossible to form a mask thereon by blocking out all required translucent particles. No substance or method is known which will permeate the entire thickness of

such an element (wholly translucent glass) so as to restore transparency to the entire depth or thickness of the element.

■ Infringement is not avoided by a multiplication of elements or parts. Nor may it be avoided by separating one integral part into two, the two parts doing substantially what had been done by the one entire part. Samson-United Corp. v. Sears, Roebuck & Co., 2 Cir., 103 F.2d 312, 315, certiorari denied 307 U.S. 638, 59 S.Ct. 1039, 83 L.Ed. 1519; Hookless Fastener Co. v. G. E. Prentice Mfg. Co., 2 Cir., 75 F.2d 264, 267, certiorari denied 295 U.S. 748, 55 S.Ct. 826, 79 L.Ed. 1693; Skelton v. Baldwin Tool Works, 4 Cir., 58 F.2d 221, 227. The substitution of two steps for one to accomplish the same thing does not avoid infringement. If the Berggren crayon be an improvement, that would not excuse the defendant. The rule is well established that one who appropriates a patented invention or the substance thereof without the consent of the patentee does not avoid infringement by improving the invention or by using an improvement made by another. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298; Cochrane v. Deener, 94 U.S. 780, 787, 24 L.Ed. 139.

■ We think it is clear that the defendant's method comes within the claims of the Balaban patent and constitutes an infringement thereof.

■ The defense of file wrapper estoppel rests wholly upon the premise that the two types of diffusing masks disclosed by the patent are distinguished by the use of a transparent element in the one and a translucent element in the other. If this premise were well founded, then, since the claims of the patent call for a transparent element, the defense would be valid. But the defendant here merely repeats its error of referring to the transparent element under "Type 2" as a "translucent plate". The patentee himself originally made the same error when he specified a translucent element and was properly instructed by the Patent Office to change the word to transparent. Since the element used in each of the types is a transparent element, there is no estoppel as contended for by the defendant.

## Conclusions of Law.

1. This court has jurisdiction of the parties and the subject matter.

2. Plaintiff Alexander Balaban is the owner of United States patent to Balaban No. 2,083,215 in suit, and plaintiff Robert B. Wheelan is the owner of license rights thereunder exclusive in the field of operating photographic portrait studios in department stores, the field in which defendant's infringing practices have been carried on.

3. The said Balaban patent No. 2,083,215 is good and valid in law as to each of the claims thereof.

4. Each of the claims of said Balaban patent No. 2,083,215 has been infringed by defendant.

■ 5. Plaintiffs are entitled to a permanent injunction against further infringement and to an accounting of profits and damages arising out of past infringement and to recover their costs and disbursements.