## MYERS v. BEALL PIPE & TANK CORPORATION.

### No. Civil 169.

District Court, D. Oregon.

Oct. 28, 1940.

Interlocutory decree for plaintiff.

Beckman & Galey and John D. Galey, all of Portland, Or., for plaintiff.

J. S. Middleton, of Portland, Or., for defendant.

JAMES ALGER FEE, District Judge.

Myers was granted patent 2,090,874, covering a logging trailer, on August 24, 1937, and is the sole owner thereof. At the initiation of the relationship between the plaintiff and defendant, the latter had manufactured certain trailers under license from Myers. Thereafter defendant built certain other trailers which are claimed to be in infringement of the patent. The pretrial order herein defines the issues as follows: (1) Was the license agreement performed by defendant? (2) Was the patent limited by the prior art so that trailers made by defendant are not infringements? (3) Was the patent so limited by action of the plaintiff in the patent office? (4) Was the patent invalidated because of anticipation by certain named patents? Injunction was asked and damages.

*Claims:* The claims of the Myers patent are as follows:

1. In a trailer the combination of a cross member adapted to be connected with a reach, a down-turned extending forked frame at each end of said cross member, the outer side of each frame extending above the top of said cross member to form rub plates, and wheel uniting springs rotably mounted between the forked ends of said frame.

2. A spring mounting for a dual axle trailer consisting of a forked arm having a head connecting with the upper ends of the fork and having a cross member attached to said head the outer side of said fork extending upwardly beyond the top side of said cross member, said outer side having the top end outturned to form a rubbing plate, the lower end of said fork having a spring pivotally mounted between its ends and means for mounting a road-engaging wheel at each end of said spring.

3. In a device of the class described, a pair of down-turned fork members having a horizontal connecting bar between the upper ends thereof, means for attaching a reach to said bar, rubbing plates forming extensions of the outer sides of said forks projecting upwardly and outwardly from the ends of said bar and means for pivotally mounting a pair of dual axles on the lower ends of said forks.

4. In a trailer the combination of a cross member adapted to be connected to a reach, an integral down-turned forked frame at each end of said cross member, the outer-side of each frame extending above the top of the cross member to form rub-plates, a bolster pivotally mounted on said cross frame and supported by said rub-plates and spring mounted ground-engaging elements connected to said forked members.

When Myers had first conceived his device, there was correspondence and conversation between him and the representatives of defendant concerning a license. The evidence is conflicting as to what was the final agreement. It is most satisfactory to conclude that the defendant was to construct one machine on the Myers design, which was to be placed with a logging concern so that defendant could watch results and determine definitely whether the construction would be suitable. If the test showed it was not suitable, then the right of defendant to manufacture was limited to one machine. But if the test proved to defendant that a substantial saving could be made in the weight and cost of the unit, plaintiff was to receive $125 down and $7.50 on each trailer manufactured by defendant.

Defendant did construct the trailer according to the design of Myers. There was a test conducted. Defendant tendered a check of $50 to Myers. Apparently the conditions precedent were fulfilled, because defendant constructed six more trailers of this type. Defendant then began to receive complaints that the construction was too light and flimsy on account of the absence of a cross shaft among other things. Defendant took back one trailer and made repairs upon others. Then apparently the defendant concluded that it was a term of the agreement that the units do a satisfactory job and that the company continue to use the design. No more payments were made to Myers. Therefore, it must be concluded that the defendant did not perform the license agreement.

In view of complaints above mentioned, defendant abandoned the construction of the Myers type of trailer and began to build model "906". This device was much heavier in construction and had a cross-shaft./ Myers contends that the claims of his patent are thereby violated. Defendant answers that the prior art limited the field so that by constructing trailers in accordance with principles so exemplified, the patent of plaintiff is not infringed. Furthermore, it is said the Myers' patent has been anticipated by certain named patents and is thus invalidated.

Upon the questions proposed, the gist of the idea must be segregated. Invention is present only in the peculiar operation of the rub plates which partially transfer the weight of the load upon the bolster to the suspension springs. This weight is distributed at three points, one around the king pin and two others, respectively on each end, outside the center of the trailer above the wheels. This particular feature appears in no other device before the court, except in machines manufactured by plaintiff and defendant and in the patent itself.

The patents cited in anticipation, as well as the Frank Reid trailer, embody substantially a trailer with the springs and wheels attached to a cross member. None go further and describe a device which distributes the weight through the rub-plates, as the specifications of this patent show. Therefore, the devices cited constitute but

one element of a combination. With this element, plaintiff has combined another distinctive feature not found, according to the record, in any other device. The rubplates alone are a familiar device, but here these elements do not perform the usual purpose of absorption of friction but a peculiar purpose of weight distribution. The inclusion of rub-plates, which had the function of removing part of the weight from the center of the trailer and distributing it on the outside of the respective spring mountings, made an entirely new combination performing a distinctive function. The mere fact that the spring mounting alone is shown in other patents or devices is then immaterial, since this was only one element of the unique combination.

Function is not patentable, but function shows the explanation of the form, the result, the means of obtaining the result, and the operation and co-operation of the elements to produce the result. The function of the rub-plates by reason of placement is to distribute part of the weight outside the springs in a three-point suspension and to distribute it therefrom by four-point suspension to the springs and wheels and thus give more stability to the trailer, less tendency to swing and less torque upon the axles and springs.

In this patent, neither the functional relationship nor the results were set out as an element of any claim. But the specific structural elements required to furnish a concrete exemplification of invention were essential to the setting up of new functional relations for the production of new and useful objects claimed in the patent. The objects of the structural device and the specifications may be referred to and considered to determine whether a broad scope was claimed or a relatively narrow one.

The main object stated in the patent was not accomplished. It proved impracticable to eliminate the "major portion of the pivot shaft", but the claims are not bound down to such a construction but "can be used on any type of dual axle trailer in which the springs are made to pivot on a center shaft." In view of the breadth of the objects and the claims, the addition of a pivot shaft to the trailer by the defendant, instead of the pivot bolts shown in the drawings, would not avoid infringement if the distinctive features of the patent were pirated. The contention of defendant that this feature rendered the Myers patented device inoperative is of no avail. Not all of the stated objects of the invention include this feature. The claims in particular are not based upon the absence of the center shaft, although the model shown in the drawings lacks this member. That is immaterial since a novel idea and combination is exemplified in the claims, without reference thereto.

The chief contention of defendant is that the form of the peculiar forked frame described in the patent is of the essence. The devices now manufactured by the defendant do not contain such a feature in the form described. However, one could saw from the trailer of defendant a member which would conform to the specifications of the patent. It is true the bottom portion of the downward extension of the fork would even then be bolted to the upper portion. It is scarcely conceivable that this division could make a difference, since it is not claimed that the function is changed thereby.

The patent does not specify how the peculiar forked frame is to be attached to the cross member. In actual practice, it is welded as a part thereof. When so treated it becomes integral therewith. Merely calling the same piece of steel a portion of a frame, instead of a part of a peculiar shaped casting, when this piece has become an integral portion of a trailer, establishes no distinction. The weight is borne and distributed in exactly the same manner.

It is to be noted also that the inner flange of the forked frame is present in the devices made by defendant but is apparently a part of the frame. No point is made of this feature and none could be, for the reason that when the parts are cast or bolted together as the patent shows they must be the function of the steel is the same whether originally in one form or another.

It is, therefore, doubtful that any theory of equivalency is necessary for decision. The broad generic outline of the idea is that the weight be transmitted from the bolster through a three-point suspension upon the center and the rub-plates to a four-point suspension upon the springs and wheels. A concrete exemplification is outlined which included the peculiar forked frame. But the objects of the invention are stated in broad terms. Furthermore, the specification shows that it was intended that the cross member, the forked frames

at each end thereof and the reach were to be amalgamated into a single integral whole by welding or bolting. When the complete assembly is so made of the Myers device and the 906 of defendant, the product is identical in form as well as function and result. Whether the various members have different forms prior to integration is immaterial. It is likewise immaterial that the claims of the patent specify the forked frame as the specific exemplification of the idea of plaintiff.

However, if the doctrine of equivalents is a necessary bridge, the result is the same. The defendant substituted a known equivalent for the forked frame which accomplished the same result by the same means, and the co-operating factors had the same function as those delineated by Myers. The prior art then did not limit the field so as to protect the devices of defendant from characterization as infringements.

Although plaintiff withdrew a claim which was broad enough to cover certain of the other patents cited, that claim did not set out the peculiar combination claimed in the patent granted but was limited to the matters covered in previous patents.

It is true that if the defendant was manufacturing trailers in accordance with the devices exemplified in LaGasche or De-Bou or the other cited patents, infringement of the patent of plaintiff would be negatived. But here it is clear that to any of such designs defendant has added rub-plates which result in a three-point suspension of weight which is the distinctive feature of the device of plaintiff.

The patents cited do not anticipate. Defendant by adding the rub-plates thereto copied the distinctive design of plaintiff.

The Court, assisted by the presumption, finds upon the record here, that the patent is valid and involves invention, and a novel and useful combination is there exemplified. The plaintiff is the sole inventor. The mere fact that he directed some other person to work out mechanical phases of the device does not detract from the originality thereof.

Infringement is thus established as to all the models of defendant in controversy. This infringement is deliberate in the sense that the defendant wilfully made the trailers with the idea that the changed form prevented infringement.

The Court has not sufficient evidence here to determine whether or not the Point-er Willamette is of the same design as the other machines. The testimony is inconclusive. The exhibits are not such that illustrate the exact design. No model is presented. The catalogue illustration does not show infringement. There is a difference in the construction, but until the Court is better advised, the Court cannot pass upon the question of infringement. Obviously, a charge of contributory infringement cannot be based upon such a foundation.

The Court reserves the question as to the damages until future trial.

Findings and interlocutory decree may be drawn in accordance with the opinion.