## MYERS v. BEALL PIPE & TANK CORPORATION.

## MYERS v. FRUEHAUF TRAILER CO. OF CALIFORNIA.

### Nos. 169, 3115.

United States District Court
D. Oregon.

Oct. 5, 1948.

Ashley Greene, Portland, Or., B. G. Skulason, Portland, Or., David Sandeberg, Portland, Or., for plaintiff.

J. S. Middleton, Portland, Or., for defendant Beall Pipe & Tank Corp.

Charles R. Spackman, Jr., Charles E. Wright, Pendergrass, Spackman & Bullivant, Portland, Or., Arthur W. Dickey, Harness, Dickey & Pierce, Detroit, Mich., for defendant Fruehauf Trailer Co.

JAMES ALGER FEE, Chief Judge.

These are suits for injunction against alleged infringement by the respective defendants of United States Patent No. 2,-090,874, granted to Henry Clay Myers on August 24, 1937, on an application filed April 3, 1937. In each case damages are also asked.

A history of the litigation in this district may have some value for clarification. The Beall case was filed July 12, 1939, and was tried before the writer November 14 and 15, 1939. Thereafter the identical patent was in litigation in this district in the case of Myers v. A. S. Page and Ellen Page, copartners, which was initiated by complaint filed January 7, 1944. This cause was tried and opinion rendered by this court on April 23, 1945. The Court of Appeals for the Ninth Circuit affirmed by opinion, Page v. Myers, 155 F.2d 57. Thereafter Myers filed several suits for injunction on account of alleged infringements.

Thereafter the defeated party in the Beall case applied to the court for a reopening of that cause. Likewise, the defeated litigant in Myers v. Page applied to this court for a reopening of that cause. This was refused because the final disposition of the cause rested upon a mandate of the Court of Appeals. Motion was made before that court, and the order is as follows: " * * * it is ordered that the Motion to Recall Mandate be, and hereby is denied, and it is further ordered that the said District Court may exercise its discretion in determining whether or not to hear the newly discovered evidence and to take such further action in the cause as may be proper."

Thereupon the court, in accordance with this order, set the cause for pretrial conference.

Thereafter motions were filed for a reopening of the Beall judgment. Subsequently, pretrial conferences were held in the pending cases. It was directed that pretrial orders be entered in each of the pending causes, but that all be consolidated for the purpose of taking proof.

In the Page case, on September 29, 1947, an order was entered granting petition for withdrawal of motion for new trial in view of settlement by the parties and satisfaction in full of judgment. Actions by Myers against several other persons and firms were also set upon the same day. Before or during the trial, all of these were compromised by recognition of Myers' claims, and all were dismissed except Beall and Fruehauf. The history of these cases is as follows:

| | |
|---|---|
| Myers v. Isaacson | Filed April 18, 1946.<br>Dismissed with prejudice upon stipulation September 30, 1947. |
| Myers v. Pierce<br>Myers v. Wentworth & Irwin<br>Myers v. Trombly | All three were filed April 18, 1946, and dismissed with prejudice upon stitpulation September 26, 1947. |
| Myers v. Gunderson | Filed April 18, 1946.<br>Dismissed with prejudice upon stipulation June 17, 1946. |
| Myers v. Jorgenson | Filed April 22, 1946.<br>Dismissed with prejudice upon stipulation October 27, 1947. |

The one exception is as follows:

| | |
|---|---|
| Myers v. Walker | Filed April 18, 1946.<br>Filed order quashing service of summons September 22, 1947. On October 20, 1947, cause was dismissed without prejudice for failure to prosecute. |

The Beall case and the Fruehauf case proceeded to trial. The Beall case was submitted almost exclusively upon anticipation. The Fruehauf case was submitted upon the ground of a lack of validity, anticipation, and upon a renewal of the attack upon the novelty, utility and invention shown in the Myers patent, and upon the ground that the Fruehauf machines do not infringe. Briefs have been submitted upon the two causes still pending. The whole field has again been covered and the court has again reviewed the entire situation with meticulous care.

The claims of the patent are as follows:

"1. In a trailer the combination of a cross member adapted to be connected to a reach, a downturned extending forked frame at each end of said cross member, the outer side of each frame extending above the top of said cross member to form rub plates and wheel uniting springs rotatably mounted between the forked ends of said frame.

"2. A spring mounting for a dual axle trailer consisting of a forked arm having a head connecting the upper ends of the fork and having a cross member attached to said head, the outer side of said fork extending upwardly beyond the top side of said cross member, said outer side having the top end outturned to form a rubbing plate, the lower end of said fork having a spring pivotally mounted therein between its ends and means for mounting a road engaging wheel at each end of said spring.

"3. In a device of the class described, a pair of downturned fork members having a horizontal connecting bar between the upper ends thereof, means for attaching a reach to said bar, rubbing plates forming extensions of the outer sides of said forks projecting upwardly and outwardly from the ends of said bar and means for pivotally mounting a pair of dual axles on the lower ends of said forks.

"4. In a trailer the combination of a cross member adapted to be connected to a reach, an integral downturned forked frame at each end of said cross member, the outer side of each frame extending above the top of the cross member to form rub plates, a bolster pivotally mounted on said cross frame and supported by said rub plates and spring mounted ground engaging elements connected to said forked members."

■ This court has heretofore held that these claims "particularly point out and distinctly claim the part, improvement" and "combination which he [Myers] claims as his invention or discovery," in the manner which the statute requires.[1]

■ A great deal of time was spent arguing the question of whether the language used by this court and that used by the Court of Appeals were inconsistent with each other or with the claims. Clearly this was waste effort. The technicalities of statement must be left to the draftsmen of patent claims, which, of course, must be tested by the lodestone of the act. Each opinion was an attempt to state in non-technical language wherein it was believed by the court lay the deviation from the norm which the expert craftsman, skilled in the particular art, would have followed without the teaching of Myers. Both opinions of the lower court and the opinion of the Court of Appeals could have chosen the wrong mechanical theory respectively and still the patent must be upheld if the claims bodied forth specifically a device which is novel, useful and the product of invention.

It must be remembered that all three of the opinions were written in the face of specific lighting from the then accused devices and are colored to blend into that background. Neither were they intended to nor do they destroy the adaptability of the claims as drafted, to blend with other highlights.

■ The reason for the confusion in the argument of defendants is the failure to distinguish between the claims of a specific device or combination and the conclusions as to the function. The patent must issue upon and be upheld upon particular and distinctive claims of a part improvement or combination. The patent depends upon the particular device claimed. But

1. Myers v. Fruehauf, Pretrial Order, Question VI, Page 5.

the thinking as to novelty, utility and invention is done in terms of function in the light of the progress of the particular art.

This court twice and the Court of Appeals once decided that the claims were sufficient.

While a restatement of the functional aspects of these claims might be made in view of the argument as to the language of this court in previous opinions, a firm conviction that the patent bodies forth invention prevents further extension of exercises in dialectics and semantics. Other courts may choose, respectively, and explain in their own idiom a theory of function.

█ It is true, as claimed, that a patent cannot be expanded or enlarged beyond that which is explicitly described and claimed therein. A corollary of this axiom is that no court can, by expounding a theory of function, restrict that structure described and claimed.

The writer has heretofore pointed out that it was passing strange that the presumption of validity, which formerly was accorded the grant by the Patent Office, one of the oldest and most firmly founded of the administrative bodies, is treated by the the appellate courts as evanescent as a cloud. Therefore, in consideration of this patent, the court has treated it as though the burden was upon the patentee to establish validity. In no other way can the trial courts, under the present winds of doctrine, find whether a patent is strongly rooted enough so that it will not be uprooted. This is in strong contrast with other administrative agencies, which can do no wrong.

█ It must be remembered that all of the devices and parts which are now present in the Myers trailer were old, and that, specifically, each one of the parts had been previously used for some purpose or other in the specific art of making trailers. Wheels of rubber and steel are habitually used, and both single and double axle trailers are common. Straddle mounts are found in the construction of many logging trailers, but particularly since 1935. Swinging bolsters, solid bolsters, cross members or cross beams, kingpins, cup and saucer pivots, reach and various equivalent methods of reach support and rub plates are all disclosed by various types of logging trailers. The present Myers patent is for a particular combination of many of these well known parts, which is described by the claims. Such a collection of old elements is called a mere aggregation, unless there is some functional novelty and utility which results from the inventive power and which coupled them together as described in the claims. This court has already many times reiterated that this patent exemplifies a combination of parts which does perform a new function.

█ The testimony of the experts of the defendants has been directed toward proving that the Myers patent does not operate in a useful manner. Likewise, it is their contention that the position of the rub plates does not have the effect which it is the theory of Myers, as a witness, that it has. However that may be, it is clear enough that the combination which has been claimed in the Myers patent has revolutionized the industry, and that Fruehauf and the other defendants have all copied after this design. This device filled a long felt want in the logging industry. One of Fruehauf's witnesses testified that the rub plates were of no value, and even suggested that they could be removed from the Fruehauf machines without destroying efficiency. If they had been removed from the Fruehauf machine and no equivalent part substituted therefor, there would have been a new invention, because the dropping out of any element essential for the success of one patented device calls into play entirely new principles. Obviously, this offer was not made in good faith, or the litigation would be at an end.

In the brief of Fruehauf, this sentence is reiterated many times, as follows: "This issue is fully contested with respect to any interpretation of the patent that would cover and monopolize defendant's trailers." This is apparently an argument ad hominem. It has been encountered in many patent cases, so it might as well be dealt with here. It harks back to the distrust of monopoly common to the courts since Tudor times. But the monopoly caused by the granting of a single patent to one inventor as a re-

ward of his genius is negligible when compared with the sway over an empire of unpatented articles maintained by those able to manufacture them, because the courts are fearful that another patent will close the field in that direction to competition.

Turning now to the patents which are cited as anticipatory or exemplifying the prior art to indicate that Myers had no field for invention, the Merrill patent was not dealt with by the Patent Office nor cited by it, but it was dealt with by this court in considering the art in the case of Myers v. Page, in the following language: "The Merrill patent shows a single axle trailer with a bolster and with rub plates on the frame underneath. No straddle mounting or four-point suspension underneath is shown. The entire purpose of the patent was to set out a pivot mechanism to permit of a rocking action of the bunk upon the springs so that no distortion of any part of either would be effected by the shifting of the weight. By the Merrill device, neither the means, the results accomplished, nor the method used are claimed to be comparable to those shown in the devices before the court. Obviously, the functional relations of the elements are entirely different."

The fact that the plates or rub plates did not perform the function which the rub plates perform on the Myers, of casting down the weight onto the cross member in a particular way, is shown by the quotation from the Merrill patent, appearing at lines 54 to 73 of page 2, as follows: "In employing such a bunk side bearing plates 41 carried by the bolster, and 51 carried by the bunk, are employed. These function as any ordinary side bearing plates of cars. At times it may be desirable that the bunk shall be locked in position and not pivoted. To provide for this I have provided each of the side bearing plates 41 with a notch 43 and have mounted upon the side face of the bunk 5 a latch 52 which is pivoted so that when not required it may be swung upwardly and towards the center so as to rest upon the side plate 51 in the position shown at the lefthand side of Figure 1. When it is desired to lock the bunk to prevent turning, these latch bars may be swung outwardly and downwardly in the position shown at the right hand end in Figure 1, in which position they enter slots 43 to hold the bunk rigidly in position."

■ Even if it be claimed that the Merrill patent shows exactly the same structure down past the cross beam and that the Lagache patent shows the same arrangement of elements in the straddle mountings of the wheels, there still was an opportunity for invention by combining these two structures in order to make a coordinated whole which functioned as a unit and coordinated the stresses through both portions. The mere existence of similar structures which were not in combination is not enough to void the claim of invention.

■ The defense of anticipation is in a different category from that of lack of invention, although these may arrive at the same point. There is always a possibility that research of counsel may disclose devices in the public domain which may have escaped the limited facilities of the administrative body. If the public already has access to the idea, no reward is due the patentee, even though he may in good faith have believed himself the inventor. Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049. Therefore, consideration will be given to the alleged prior invention and use by Clark and Shuey. With regard to these devices, if either of them show the same exemplification as Myers claims in the patent, then the latter would be dethroned as inventor. The Clark device (Exhibit R 19), which was exhibited to the court, does not display the construction claimed in the patent. The suspension of the load is entirely different. In Clark, the outside legs of the spring brackets bear the bulk of the load, and there is no counterbalancing force delivered from the kingpin to the inside of the wheel mountings. Torque has resulted from this construction, and the results thereof are shown clearly. Torque has been exerted against the inside legs of the brackets, forcing them upward and inward. By no claim could this device now be said to infringe the Myers patent.

There was a great deal of testimony by witnesses as to the changes which had been

made in the original construction of Clark. While these stories were told in good faith, they are not consistent with each other, and particularly do not conform to the present condition of the Clark trailer. This oral evidence is entirely uncorroborated by any writing of any kind. Memory plays strange pranks in such a situation. But there is one consideration of note. If the Clark trailer embodied the invention, it is a strange circumstance that it was discarded and that no more were made like it.

The Parker trailer may be dismissed with a word. The matter rests upon the testimony of witnesses, uncorroborated by any writing. It was unconvincing. Besides, the failure to make others tends to show some inherent defect, as, does the discard of the original.

The Shuey trailer is then urged by defendant Fruehauf. Similar considerations affect this device, which was exhibited to the court (Exhibit 123). Although the suspension of the wheels may be equivalent to the four-point distribution of Myers on the under carriage, this device has no bolster whatever at present. The testimony as to its previous condition was unconvincing. Inspection of the upper surface of the cross member in connection with the testimony may indicate that at one time there was a pivotal bolster above the cross member, which was in contact therewith for almost its full length, although the outer ends of the cross member are lower than the center. This would not show the same weight distribution as Myers, even if proved.

None of these devices show that the Myers patent was thereby anticipated by the structure. Beyond this, the evidence as to when any of these were made or used is entirely unconvincing. There is considerable doubt that either of the trailers produced for inspection was one concerning which the witnesses were testifying.

The Reliance trailer is cited by Beall, and it is contended that there should be some limitation of the Myers claims in view of this construction. The Reliance does have rub plates mounted outwardly and a bracket mounting which goes to the outside of the spring. This device was brought to the at-

tention of the courts in the Page case, and has therefore been already ruled upon. It does not transfer the weight from bolster to the wheels by the means Myers uses. Although the parts are in some respects similar, the analogy is one of form and not of function of the devices as exemplified in Myers.

There is considerable in the record concerning the construction on railroad cars of swinging bunks, and in this connection there have been cited some patents showing the prior art. It is not altogether certain that the art of trailer construction is allied to the construction of railroad cars. Certain it is that the ends to be achieved are not those which were striven for by Myers. In railroad cars, the purpose of this construction is to permit the whole log to be placed on two or more cars and the cars to swing independently around curves without demounting the logs which are being carried. Obviously, weight suspension and transmission have no place in this construction. Dealing with the Pacific Car and Foundry railroad cars, there were only displayed to the court some pictures of these cars in a magazine print. The details of construction are not there shown. One witness testified as to the construction of these cars, but the examination was upon general lines and did not disclose anything which might indicate an anticipation of the Myers patent. The witness testified that there were drawings of these models, but there was no attempt to submit such drawings to the court. On the whole, taking the pictures and the testimony, there is no evidence of anticipation, nor is there indication that the principles and functions of the Myers patent became public property prior to his filing of his patent application. The court has been careful in this opinion not to indicate any limitation of the Myers claims and to rebut any attempts to limit them by the language of previous opinions of this court or of the Court of Appeals. This is particularly important in this connection, as it might seem that a full disclosure has not been made with reference to the railway car devices.

In dealing with the question of infringement, the exhibits which show the construc-

tions of the defendant which are accused are Nos. 117 to 122-A, inclusive, and 122-B-13 and 122-B-14, which are photographs, and blueprints 122-B-1 to 122-B-12, inclusive, and also 122-B-15 and 122-B-16. The line drawings of defendants' constructions in reduced scale, which have been taken from these exhibits, are attached to the brief. These line drawings in good faith illustrate the defendants' theory and serve as visual presentations of the argument, but, instead of throwing light upon the situation, they make the confusion worse confounded. It cannot be emphasized too many times that the Myers patent is a combination which not only includes the superstructure and the spring mountings, but also includes the wheels. Unless viewed as a whole, weight transmission and stabilizing factors of the combination of devices which was put together by Myers will be overlooked.[2]

The court will direct that there be included in the record on appeal the colloquy between Fruehauf's engineer, Bistrom, and the court, which appears on pages 595 and 596, where the position was taken that the rub plates served no essential function, and the court pointed out that, if they served no essential function and if neither they nor some equivalent were used, it would be indicative of a new invention. Also for Fruehauf, it will be noted that the attorney took no such position, as did the engineer. This colloquy clearly indicated the intention of Fruehauf to use the present monopoly of manufacture of logging trucks, which it shares with a small number of substantial industrialists, to corral the Myers device without the necessity of having to compensate the inventor.

The same spirit runs through all the contentions of this defendant. It is indicated that, in the spring mounts shown in Exhibits 122-B-6 and 122-B-7, the constructions are made on two parts, that the inner part is welded to the bottom of the main frame at its end, and the other and outer part is welded to the inner part and is not attached directly to the main frame at all. The vice of this statement and of the construction lies in the word "directly." Whether or not these are made in the same shape as the members of the Myers patent makes no difference whatsoever. The wheels and the spring mounts of the devices above noted receive the weights from the center pin and from the mounted wear plates, which are beyond the ends of the spring mounts and which transmit the weight downwardly onto the four points of the spring mounts. This weight comes from the center and from the outside of these spring mounts, and therefore the thrust is an extremely complicated problem in dynamics.

There seems to be some claim that the reach supports are an integral part of the Myers patent, but this is of no validity. It is true that there must be some method of drawing the construction along, and that this is accomplished by a reach, but the fact that these are in the Fruehauf devices attached to the main frame member, without connection to the spring mount directly as claimed, has no functional significance. In any event, the reach and the reach supports serve simply as a device to draw the construction along.

Notwithstanding the argumentative character of the line drawings of defendants' exhibits, which are placed in the back of the brief and which have heretofore been explained, if they be compared with Figure 3 of the Myers patent, it will be seen that all of the essential elements of the one device are included in the other, notwithstanding the altered forms of the Fruehauf devices, which, to the court's mind, are simply for the purpose of confusion.

The cross members of the frame of the Fruehauf trailers extend the full width thereof. The load is transmitted through

2. It must be remembered that the construction shown by Exhibit 93 and corresponding structures are not within the limit of the claims of infringement. This is one model in which there is no swinging bunk and no rub plates. Therefore, even if the underneath construction, which is used, is exactly the same as that on the other, there is no analogy which can be drawn between this and the combination such as exemplified in the Myers patent.

the kingpin and the rub plates. The Myers patent accomplishes the same thing in exactly the same way. No differentiation can be found which disregards the fact that the Myers patent, when assembled, presents the same structure. The cross members of the Fruehauf frame are the pair of transverse channel members, the plate 11, the rub plates 15 and the head 14.

The straddle spring mounting receives the load which is imposed upon the kingpin mounting and the rub plates and transmits the thrust to the ground engaging elements at four points. Myers does the same thing in exactly the same way. The rub plates are both weight transmission devices, which serve to carry the load directly above the springs instead of being transmitted thereto by twisting action. These rub plates are extensions upward of the cross members of the frame in Myers and Fruehauf. Both are provided with the equivalent of a reach whereby traction is transmitted through the device to the ground engaging elements.[3]

The changes which have been made are of form only. The essential function of the frame, the rub plates, kingpin and plate and straddle mounts is the same. The result is accomplished by identical means. The alterations in form are so contrived as to suggest deliberate decoration to camouflage the essential characteristics by misdirecting the attention.

As has been said before, the Myers device up to the top of the cross member and the rub plates is one construction, whether cast solidly as one piece or put together as various pieces. In each instance, the stresses are transmitted as though it were a unit. This is true likewise of the Fruehauf trailers. It should be likewise noted that there can be sawed out of the Fruehauf trailers a member which will correspond to the member drawn in the Myers trailer. Apparently, counsel for Fruehauf has been misled by such a statement of the court in previous opinions dealing with the Myers patent as against other attacks. And it has been contended that the court thereby limited the Myers claim. It is not within the function of the court to limit claims of a patent, as has been pointed out above. The court now holds that the Fruehauf trailers, each acting as a unit, act exactly in the same way in which the Myers patents act in operation. The court also holds that each of the members of the Fruehauf trailers performs an equivalent function to that of the parts of the Myers patent, and, although different in form and differently put together, they are in all essentials exactly the same device. Neither the expert testimony nor the changes in form of the Fruehauf trailers convinces the court that the same result in operation is not, therefore, achieved by exactly the same means.

In attempting to avoid the claims of infringement, it is also argued that the form of the structure does not fall within the claims of the Myers patent. It is fairly obvious that a great deal of effort has been gone to in order to change the form so that it would look different than the Myers patent, but imitation of essentials is the truest flattery and also points to the reality of infringement. Any equivalent of a reach with proper devices for attachment, so that traction is transmitted to the frame and to the ground engaging elements, is sufficient to satisfy a finding of infringement. The attempt to differentiate the accused constructions from those of the patent, because the means of attaching and supporting the reach are not identical, is made by subtly fallacious reasoning.

After all, it must be said that, after Myers discovered the placing of the elements which took the weight out beyond the ends of the spring bracket mountings which held the wheels and centered the pivot on the kingpin or cup and saucer in the center, so that the thrust was equal to what lies from the outside and from the center, the device has been revolutionary in the industry and everyone who makes heavy duty logging trailers has apparently availed himself of the principle. After the suits of Myers v. Beall Pipe & Tank Corp.[4]

---

3. See detail of reach connection in one of defendant's trailers, Exhibit 122-B-5. There are other examples.

4. Myers vs. Beall, Pipe & Tank Corp., D. C., 36 F.Supp. 752.

and Myers v. Page,[5] which latter was affirmed by the Court of Appeals of the Ninth Circuit, everyone has apparently conceded this except Fruehauf. It may well be said that the argument of Fruehauf here ran almost word for word to that urged in the first Beall case, namely, that the claims of the patent could not be construed broadly enough to cover all units which had exactly the same functions arrived at by identically the same means. It was urged then, as it has been urged here, that the form of the Myers patent in all particulars was absolutely essential to validity. The court has time and time again rejected this claim, and again rejects it.

The court holds the Myers patent valid, unanticipated and, as far as Fruehauf is concerned, infringed. Findings, conclusions and judgment may be submitted, enjoining further infringement and directing that appropriate means be taken to fix damages for past infringement.

The court denies the motion to reopen the Beall judgment upon the whole record. Appropriate order may be submitted containing findings and conclusions. The order previously entered directing accounting is in force and effect, and appropriate proceedings will be had thereunder.