**Louise K. WEBSTER, Plaintiff,**

v.

**SPEED CORPORATION, Defendant.**

Civ. No. 8704.

United States District Court
District of Oregon.

July 19, 1957.

Kenneth S. Klarquist, of Buckhorn, Cheatham & Blore, Portland, Or., for plaintiff.

J. Pierre Kolisch, of Ramsey & Kolisch, Portland, Or., for defendant.

EAST, District Judge.

Louise K. Webster (plaintiff), a resident of Portland, Oregon, is the owner of the J. M. Speed U. S. Letters Patent No. 2,253,990 (Speed Patent), granted August 26, 1941, by virtue of mesne assignments duly recorded in the United States Patent Office. The Speed Patent relates to a tool handle for holding files, screwdrivers, hack saw blades, and the like.

Speed Corporation, an Oregon corporation (defendant), is in the business of manufacturing hardware items, and one of its items of manufacture is a tool handle for holding files, screwdrivers, hack saw blades, and the like.

This is a suit for infringement of the Speed Patent by the defendant in the course of manufacture and sale of its tool handle.

Prior to March, 1948, C. P. Webster, the plaintiff's husband, now deceased, was the owner of the Speed Patent and had manufactured and sold tool handles under the same. In March, 1948, through mutual agreement, the defendant procured from the said deceased an exclusive license for the manufacture of tool handles under the Speed Patent. This arrangement was terminated by mutual consent of the parties in August, 1949.

In 1950 the defendant went into production of a tool handle (accused device). On September 22, 1950, the defendant filed a patent application on its designed tool handle in the name of one H. W. Kindley. Thereafter U. S. Letters Patent, No. 2,678,811, was issued on April 27, 1954. The defendant is shown as the assignee owner of the same on the face of the patent.

The parties have stipulated that the defendant's liability, if any, for infringement of the Speed Patent is limited to the period beginning July 13, 1950.

The plaintiff contends that the defendant has wilfully and knowingly infringed and is infringing the Speed Patent and that defendant has been notified of the alleged infringement by written notice; and further contends that she should be awarded a reasonable royalty as damages for past infringement of the Speed Patent and that said damages should be trebled by reason of the defendant's wilful infringement, and that she should be awarded costs and a reasonable attorney's fee and, further, that the defendant should be enjoined from further infringement of the Speed Patent.

In brief, the defendant contends that the plaintiff is guilty of laches and is barred from asserting the Speed Patent as against the defendant in view of defendant's admittedly open and notorious manufacture and sale of the accused de-

vice since July, 1950, with plaintiff's full knowledge thereof, and other grounds not germane to this opinion. Defendant also contends that the Speed Patent is invalid upon four several grounds, generalized as follows: Non-patentability, vagueness of claims of the patent and prior patenting of the invention by some four patentees, and that the patent constitutes a mere aggregation of old well-known elements, mechanisms and devices.

Defendant further contends that the accused device does not infringe the Speed Patent upon two grounds, generalized as an alleged difference in the operation of the two tool handles involved. There are some three contentions of the defendant not germane to this opinion, and the defendant denies that it is a copyist or wilful infringer, and that costs and attorney's fees should be awarded the defendant.

The pre-trial order resolves the following:

### Issues

1. Is plaintiff precluded by laches from bringing the instant action?

2. Is the Speed Patent valid?

3. If valid, does the accused device infringe the Speed Patent?

4. If defendant is found to infringe, is plaintiff entitled to treble damages?

5. Is either party entitled to costs and attorneys' fees?

It conclusively appears that the Speed Patent has one claim which in parsed form reads as follows:

1. A handle proper,

2. A ferrule at one end of the handle,

3. An operating member, rotatably and longitudinally movable in the opposite end of the ferrule,

4. Gripping jaws, movable in the ferrule and handle presenting relatively flat adjacent gripping faces, the long flat face of each jaw having at the respective longitudinal edges,

5. Right angled outwardly extending parallel cam projections,

6. Spaced parallel cam slots to receive and accurately cooperate with the pair of cam projections on each jaw and move the faces of the jaws toward each other in the relatively inward movement of the jaws, and,

7. An element intermediate the operating member and the upper ends of the jaws and responsive to rotation of the operating member to move longitudinally within the handle, the element being formed at the end remote from the operating member with

8. A slot to receive a reduced portion at the upper end of each jaw, the slot being of a width corresponding to that of the reduced portion of the jaws and of a length slightly exceeding the full width of the upper end of the jaws, whereby to permit limited free movement of the jaws relative to the inner diameter of the element to compensate for different thickness of that portion of an introduced tool between the jaws, and thereby facilitate gripping action throughout the full length of the jaws, and

9. Cooperating means on the handle and element to prevent rotative movement of the element.

### Question of Laches

It appears that the aforesaid licensing agreement between plaintiff's predecessor and defendant was terminated in August, 1949. In 1950 the defendant commenced the manufacturing and selling of its tool handle after having consulted its attorney followed by the filing of its application for a patent.

On April 3, 1952, the plaintiff, through her attorney, advised the defendant of plaintiff's claimed infringement of the Speed Patent and requested the defendant to take a license thereunder. On April 15, 1952, the defendant rejected the offer of license and disclaimed infringement of the Speed Patent through its newly designed and manufactured tool, which tool was then in the process of being patented. Thereafter defendant continued the manufacture and selling of the accused device and no further protestations were made to the defendant by the plaintiff. The present action was instituted on July 13, 1956.

■ As contended by the defendant it is a general rule that in order to successfully establish a defense of laches in a patent infringement case the claiming party must show that there had been either (1), unreasonable delay on the part of the complainant in bringing suit without a valid sufficient excuse, or (2) delay on the part of the complainant with ensuing detriment or change of position of the other party.

■ Having once notified the defendant of her position the law does not require a complainant to periodically say, you did, and receive a periodic answer, I didn't. There was no compelling legal reason for plaintiff to bring her suit before she did. If plaintiff was inequitable in her conduct of determining when to bring her suit and by reason of her non-action after making her initial assertion, caused the defendant to face some ensuing detriment or change its position to its loss, then there would be some office for the equitable doctrine of laches. The record is void of any detriment to the defendant or change of its position from the time of advice of plaintiff's contentions and the filing of the instant suit. Neither party has in any wise altered course since the initial assertion by plaintiff.

It is the opinion of the Court that plaintiff has not been guilty of laches.

### Is the Speed Patent Valid?

■ It is obvious that the Speed Patent came into a prior art crowded with various tool handle devices and was not a pioneer patent entitled to a broad range of equivalents. Speed made a narrow limited improvement in a crowded field and therefore its claim must be strictly construed. In this light the defendant urges that the alleged Speed invention is no more than an ordinary mechanical improvement.

A review of the features covered in the Speed Patent with those of the prior art patents shows that the arrangement of the jaws of the handle of the Speed Patent are such that they will adjust themselves to accommodate tool shanks of varied contours. This feature or thought cannot be ascertained in any of the prior art patents cited nor can it be determined that it was contemplated by the prior art.

A presumption of validity arises from the issuance of a patent. See Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, and cases cited therein. That Court also stated at page 406:

> "* * * Reasonable doubts must be resolved in favor of the validity of the patent. The presumption created by the action of the Patent Office is the result of the expertness of an administrative body acting within its specific field and can be overcome only by clear and convincing proof."

The Court is of the opinion that the Speed Patent is valid.

### Does the Accused Device Infringe?

By stipulation defendant has conceded that those portions of the patent claim heretofore cited as amounting to invention read directly upon defendant's device. From the pre-trial order, paragraph XX, it is agreed that the claim of the Speed Patent reads on the accused device except for the following:

> "* * * an operating member rotatably and longitudinally movable in the opposite end of the ferrule, * * *

> "right angled outwardly extending parallel cam projections, the ferrule being formed at each side of the jaw receiving opening with spaced parallel cam slots to receive and accurately cooperate with the pair of cam projections on each jaw and move the faces of the jaws toward each other in the relatively inward movement of the jaws and * * *."

Defendant's device does have an operating member rotatably and longitudinally movable in the opposite end of the ferrule. Defendant argues that it is movable longitudinally only when improperly operated and hence of no consequence. Be that as it may, it still so operates and does so effectively.

Defendant's device is of different form, in that the spaced flanges on the jaws have their top edge portions turned in toward one another forming a hollow element rather than parallel and therefore no cam slots are formed in the ferrule to receive the cam projections.

Despite the changes it appears that the two devices are substantially identical, operate upon the same principle and accomplish the same result in substantially the same way.

This Court is of the opinion that the changes made on the accused device from the Speed Patent amount to "a substitution of equivalents."

That the cam arrangement on the jaws and ferrule of defendant's device is of somewhat different form cannot be relied upon by defendant to escape a holding of infringement. Paraphrasing a holding in this Court—defendant substituted a known equivalent for plaintiff's cam arrangement which accomplished the same result by the same means, and the cooperating factors had the same function as those delineated by plaintiff. Myers v. Beall Pipe & Tank Corp., D.C. Or.1941, 36 F.Supp. 752.

On motion for rehearing, D.C., 90 F.Supp. 265, 272, Judge Fee made the following remarks so apropos to the instant situation:

"In attempting to avoid the claims of infringement, it is also argued that the form of the structure does not fall within the claims of the Myers patent. It is fairly obvious that a great deal of effort has been gone to in order to change the form so that it would look different than the Myers patent, but imitation of essentials is the truest flattery and also points to the reality of infringement. Any equivalent of a reach with proper devices for attachment, so that traction is transmitted to the frame and to the ground engaging elements, is sufficient to satisfy a finding of infringement. The attempt to differentiate the accused constructions from those of the patent, because the means of attaching and supporting the reach are not identical, is made by subtly fallacious reasoning."

Other cases holding that a substitution of equivalents does not avoid infringement include: Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Cutter Laboratories v. Lyophile-Cryochem Corp., 9 Cir., 1949, 179 F.2d 80; Pointer v. Six Wheel Corp., 9 Cir., 1949, 177 F.2d 153, affirming decision of J. McCullock; Finnerty v. Wallen, D.C.N.D.Cal.1948, 77 F.Supp. 508.

The doctrine of equivalents is applied even in instances where the patent is a narrow one. This was clearly established by the United States Supreme Court in Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 41, 50 S.Ct. 9, 13, 74 L.Ed. 147, where the court stated:

"* * * even where in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom. Compare Duff v. Sterling Pump Co., 107 U.S. 636, 639, 2 S.Ct. 487, 27 L.Ed. 517."

It is firmly established that the fact defendant may have made an improvement (rounded cam surface?) and obtained a patent thereon does not excuse infringement of earlier patent. Sanitary Refrigerator Co. v. Winters (Winters v. Dent Hardware Co.), 280 U.S. 30, 41, 50 S.Ct. 9, 74 L.Ed. 147; Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298; Balaban v. Polyfoto Corp., D.C.Del.1942, 47 F.Supp. 472; Shotey v. Apex Broach Co., D.C.Mich.1949, 83 F.Supp. 807.

### Is Defendant a Wilful Infringer?

█ It conclusively appears that the defendant had bona fiedly consulted counsel and relied upon his advice and accordingly designed a tool handle with

physical changes from that of the Speed Patent and made patent application which resulted in a patent. On this showing the defendant cannot be said to be a wilful infringer. See: Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F.2d 1.

### Conclusion

In conclusion the Court is of the opinion:

1. That plaintiff should be awarded a reasonable royalty as damages for the infringement by the defendant and that an accounting of the defendant's sales in infringement should be had upon which to base reasonable royalties as damages;

2. That such damages so ascertained, should not be treble;

3. That the defendant should be enjoined from further infringement of the Speed Patent; and

4. That the plaintiff is entitled to costs including reasonable attorney's fees to be found and taxed.

Counsel for the plaintiff is requested to submit proposed findings and orders in conformity with this opinion, with copies to counsel for the defendant on or before thirty days from the date of this opinion. The date for the settlement of proposed findings and orders will be subsequently fixed.